536 So.2d 1158 (1988)
Elizabeth Ann WADE, Appellant,
v.
Stevan Allan WADE, Appellee.
No. 88-1692.
District Court of Appeal of Florida, First District.
December 28, 1988.
John Paul Howard, Jacksonville, for appellant.
Rudy Hernandez, Jacksonville, for appellee.
WENTWORTH, Judge.
Appellant, the former wife, seeks review of a final judgment of dissolution of marriage *1159 in which the trial court held that the former husband is not required to support a nine-year-old child who was born during the marriage, but is neither the natural nor adopted child of the former husband. Appellant contends that the former husband is estopped from repudiating the child after having established a father/son relationship with the child since the child's birth, and representing to the child and to others that he is the child's father. We find sufficient evidence in the record to support the defense of estoppel, and therefore reverse.
The parties were married in 1975, and separated in 1984. A child was born during the marriage in April, 1979. The parties agree that the child was not the biological child of the husband, but was conceived while the parties were stationed in Iceland on active duty in the Navy, and the wife became pregnant by another man. Testimony established that when the former husband was advised of the pregnancy, he agreed to accept the child as his own. Following the child's birth, the former husband signed the child's birth certificate as his father and gave the child his surname, presented the child at church for baptism as his son, carried the son as his for all purposes as a military dependent and as a dependent on his joint income tax returns, listed the child as his son in his will, represented to the child that he is his father from the time of the child's birth up to and including the time of the hearing on the petition, and fully supported the child until 1988. The former husband in 1984 filed a petition for dissolution of marriage, publicly alleging at that time that he was not the biological father of the child. The parties in October 1984 signed a stipulation of dismissal of the petition for dissolution of marriage, and reunited. When the parties again separated in August 1985, the former wife and the child returned to Florida to reside in the marital home while the husband remained in the military service in California. The former husband filed a second petition for dissolution of marriage in 1988, alleging therein that he was not the biological father of the child. The former wife counterpetitioned for dissolution, alleging that although the child was not the former husband's biological child, the former husband had assumed responsibility for the child since the child's birth. The former wife alleged that the former husband should be estopped from repudiating the child after nine years, and, by virtue of his acceptance of the child, should be required to pay support for the child. The former husband alleged that following his first petition for dissolution of marriage, he had a conversation with the wife in the presence of the child, age five at the time, regarding the filing of the petition for dissolution and his denial of parental responsibility for the child, and that the child learned at that time that the former husband was not his father. The former husband stated that after dismissing the first petition for dissolution in 1984, he tried to maintain a relationship with the child, but that the relationship was never the same as it had been prior to the parties' confrontation regarding the paternity of the child.
Following a hearing, the trial court, relying on Hippen v. Hippen, 491 So.2d 1304 (Fla. 1st DCA 1986), ruled that because the former husband was not the biological father of the child and the child became aware of this fact following the former husband's public disavowal of paternity in the 1984 petition for dissolution, the former husband was not responsible for support of the child, and the defense of equitable estoppel was not available to the former wife. The court found that the former wife and the child have not suffered any detriment as a result of the former husband's acceptance of the child except for the possible loss of the right to institute paternity and support proceedings against the child's putative father.
Courts have applied the doctrine of equitable estoppel to preclude a person from maintaining inconsistent positions to the detriment of another in cases where a parent disavows paternity. See Marshall v. Marshall, 386 So.2d 11 (Fla. 5th DCA 1980). The doctrine has been found to be inapplicable where the only misrepresentation relied upon is that given in an original birth certificate, and no misrepresentation of parentage was made to a spouse or *1160 child. See Albert v. Albert, 415 So.2d 818 (Fla. 2d DCA 1982); Clevenger v. Clevenger, 189 Cal. App.2d 658, 11 Cal. Rptr. 707, 90 A.L.R.2d 569 (1961). Cf. Marshall, supra. In this case, the evidence established that the former husband has represented himself to the child and to others as the child's father for a period of nine years, and that neither the former husband nor the former wife has has ever told the child that the former husband is not his father. The former husband's testimony that the child was in the presence of the parties and overheard a conversation during which the paternity of the child was discussed was disputed by the former wife. The former husband signed the child's birth certificate as his father, had the child baptized as his son, carried the son as a military dependent and as a dependent for income tax purposes, and named the child as his son in his will. The record includes a card sent to the child for his ninth birthday which was signed, "Love, Dad." The former wife testified that the child "cherishes the ground he [the former husband] walks on." During the nine-year period, the former husband enjoyed the benefits of his representation as the child's father, including the child's love and affection, his status as father in the place of the natural father, and the community's recognition of him as the father. Because of the former husband's representations, the child was induced to believe the former husband is his father, and he was deprived for a nine-year period of a potential action against the putative father for support. Hippen v. Hippen, 491 So.2d 1304 (Fla. 1st DCA 1986), upon which the trial court relied, is distinguishable. In that case, the final judgment of dissolution acknowledged that two children born during the marriage were not the natural children of the husband, and the former husband owed them no duty of support. The former wife thereafter brought an action for modification of the dissolution settlement and alleged at that time that the former husband impliedly had contracted to support the children after the dissolution of the marriage by virtue of his having claimed the children as dependents and having received the benefits of claiming them as dependents. The court, in finding that the former husband could not be required on motion for modification to support the children after the dissolution of the marriage, relied on the well-settled principle that "a person has no legal duty to provide support for a minor child who is neither his natural nor adopted child and for whose care and support he has not contracted." Hippen at 1305. In this case, the former wife timely raised the defense of estoppel and presented evidence to support that defense during the dissolution proceedings.
Facts somewhat analogous to those in this case were presented to support a defense of estoppel against a former wife in T.D.D. v. M.J.D.D., 453 So.2d 856 (Fla. 4th DCA 1984). In that case, the district court held that the former husband should not be compelled to submit to HLA blood testing prior to a determination as to whether the former wife was estopped from challenging the former husband's paternity of a minor child born during the marriage in view of unrebutted evidence that the former wife had represented to the former husband that he was the father of the child, induced him to marry her on those grounds, concealed the facts of her relationship with an unidentified drug dealer who she later contended was the father of the child, accepted the benefits of marriage and the former husband's support and care, love and affection for the child, and swore in her petition for dissolution that the former husband was the child's father. We find, on consideration of equally compelling evidence in this case, that the former husband is estopped from disavowing the child as his own for purposes of parental support.
THE ORDER IS REVERSED.
MILLS and SHIVERS, JJ., concur.