714 So.2d 623 (1998)
Arthur DeRICO, Appellant,
v.
Connie WILSON f/k/a Connie DeRico, Appellee.
No. 97-2903.
District Court of Appeal of Florida, Fifth District.
July 24, 1998.
Aubin Wade Robinson of The Paige Law Firm, Belle Glade, for Appellant.
No Appearance for Appellee.
GOSHORN, Judge.
Arthur DeRico appeals the order on his petition for modification of the dissolution judgment. He argues that the trial court *624 abused its discretion by denying his petition to terminate his paternity and child support obligation as it pertains to two of the three children born during the marriage. We agree and reverse.
Three children were born during the parties' marriage: Arthur, Jr. (9/30/88), Travis (5/5/90) and Nya (11/27/92). DeRico states the parties separated immediately following Nya's birth. The final dissolution judgment, entered May 9, 1994, ordered DeRico to pay $943.00 per month in child support for support of the three children.
In January 1996, a DNA parentage test was performed as to Nya per the agreement of the parties. Test results showed a 0.0% chance DeRico was Nya's biological father. In April 1996, a blood test of Travis rendered the same conclusion. Based on these results, DeRico moved the trial court for a determination that he is not the legal father of either child and asked the court to terminate his child support obligation as to these two children.
The trial court concluded that it was in the children's best interest that they remain legitimate and denied DeRico's petition, ruling the case was controlled by the holding in Department of Health & Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993) that once children are born legitimate, children have a right to maintain that status both factually and legally if that is in their best interest. The trial court did not have the benefit of Daniel v. Daniel, 695 So.2d 1253 (Fla.1997) when it made its decision.
In Daniel, the parties stipulated that Mr. Daniel was not the child's natural father although he was married to the child's mother at the time of the child's birth. The trial court ordered Mr. Daniel to pay support because Mr. Daniel was better able to support the child than was the biological father. The district court reversed the support award, finding that because Mr. Daniel was not the biological father and was not asserting any parental rights, and because the child was not threatened with illegitimacy, Privette did not control. The supreme court affirmed, reiterating the rule that "a person has no legal duty to provide support for a minor child who is neither his natural nor his adopted child and for whose care and support he has not contracted." Id. at 1254 (citations omitted).
In the instant case, there is no issue as to paternity, DeRico is not claiming any rights as "legal father" of the two children, and, as in Daniel, the children's status as legitimate is not subject to dispute. Accordingly, Privette does not govern this case; Daniel does. There is no need for the appointment of a guardian ad litem as DeRico has no legal duty to provide support for children he neither biologically fathered, adopted, nor contracted to care for.
DeRico also sought repayment of the sums already paid in child support. Repayment of all monies paid since the date DeRico petitioned to have his paternity and support obligation terminated, September 17,1996, is appropriate because the support payments made after the filing of the petition were conditional on the court's determination of DeRico's petition. Once DeRico successfully rebutted the presumption of his legal paternity, the finding of non-paternity is retroactive to the date the petition was filed. As to payments made from the date child support was originally ordered to the date the petition was filed, repayment should not be ordered. The presumption of paternity was in effect and unchallenged for those 28 months.
Upon remand, a hearing will have to be held to determine the amount the former wife will have to repay and to set the amount of support DeRico should pay for his one biological child. The order should determine DeRico's non-paternity as to Travis and Nya and require the former wife to repay the sums received for Travis and Nya's support since September 17, 1996.
REVERSED and REMANDED with directions.
PETERSON, J., concurs.
HARRIS, J., dissents, with opinion.
HARRIS, Judge, dissenting.
I respectfully dissent.
*625 Although I acknowledge that the majority's result better meets the "well-settled rule of law" recognized in Daniel v. Daniel, 695 So.2d 1253, 1254 (Fla.1997), "a person has no legal duty to provide support for a minor child who is neither his natural nor his adopted child and for whose care and support he has not contracted," I believe this case may present an exception to such rule.[1]
The facts in Daniel justified the application of the rule. There, the husband married the mother knowing she was pregnant by another. Since it was known to the parties that the child to be born was not the husband's,Daniel made the husband's obligation similar to that of a husband taking on stepchildren. Other than by entering into the marriage itself, there was no suggestion that the husband ever intended to obligate himself for the support of this child fathered by another in the event of divorce.[2] At divorce, he claimed no paternal rights. The Daniel court held that under these circumstances there was no obligation of support. But this case is not like Daniel. And I agree with the majority that it is not like Department of Health and Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993) either although certain principles discussed in Privette may be applicable. In Privette, the issue was whether the court erred in ordering a third party (the alleged biological father) to submit to a test for parentage when there was no showing that such would be in the best interest of the children. In Daniel, the issue relating to the obligation of the husband to support a child not his was determined in the dissolution action following the parties' separation when the child was six months old and not in a subsequent modification proceeding following a divorce from a marriage in which the husband had become, in the eyes of the child, the real father.[3]
In the present case, the parties were divorced in 1994. In his petition for dissolution, the husband alleged that the three children were "born of this marriage" and sought shared parental responsibility of them. The final judgment determined that the husband was the father of the children, granted him shared parental responsibility and required him to pay support. It was over two years later that the husband moved to modify the final judgment seeking to have his paternity terminated as to two of the children. The trial court refused to grant the relief requested because it believed that to do so would not be in the children's best interest.
The trial court determined that although the wife had been unfaithful, she did not know that the children were not her husband's until she learned the DNA results. The court thus distinguishes between a wife who is unsure of the identity of the father because she has been unfaithful but remains silent and a wife who knows, or has reason to know, that the husband is not the father but leads him to believe he is. The court, based on this distinction, found that there was no fraud committed on the husband. There *626 may be sound public policy for this distinction.
The trial court apparently applied the principle that a divorce decree which establishes the paternity of a child is a final determination of paternity and is res judicata in any future proceedings.[4]State Department of Health & Rehabilitative Services v. Robison, 629 So.2d 1000 (Fla. 3d DCA 1993); State Department of Health and Rehabilitative Services v. Wright, 498 So.2d 1008 (Fla. 2d DCA 1986). An exception to this rule is when the father is misled into believing that he is the father, and therefore does not challenge paternity at the time of the divorce, because the wife fraudulently conceals the child's parentage. But, as indicated above, the trial court made a factual determination that such did not occur in this case. I would affirm.[5]
NOTES
[1] By the statement in Daniel (page 1254), "While the courts must be ever vigilant to protect our children, we do not find that the circumstances of this case justify a deviation from this established rule of law or present an exception to its application," the court acknowledges that there may be facts and circumstances which would justify recognizing the husband at conception or birth, as opposed to the biological father, as the legal father.
[2] One wonders, however, whether a man who marries a woman knowing that she is pregnant by another and does not intend to pursue a paternity action against the other has not made some implied agreement to substitute for the biological parent. If the mother does not pursue the child's rights against the biological father because of the marriage, has not the child been injured by the marriage?
[3] Even in a Daniel case in which the husband knowingly married a woman pregnant with another's child, if the marriage endured for a number of years would not the rationale of Privette apply:

It is conceivable that a man who has established a loving, caring relationship of some years' duration with his legal child later will prove not to be the biological father. Where this is so, it seldom will be in the children's best interest to wrench them away from their legal fathers and judicially declare that they now must regard strangers as their fathers. The law does not require such cruelty toward children.
Privette, 617 So.2d at 309.
[4] See Love v. Love, 1998 WL 255318 (Nev., May 19, 1998) for a discussion of a similar case.
[5] I admit that an affirmance appears grossly unfair under the facts of this case as it relates to the youngest child. The mother is apparently living now with the father of that child but is getting child support for such child from her former husband. But I am unable to suggest a reasonable exception to the exception.