716 So.2d 846 (1998)
Adrian GANTT, Appellant,
v.
Carolyn GANTT and Louvenia Holzendorf, Appellees.
No. 97-4507.
District Court of Appeal of Florida, Fourth District.
September 2, 1998.
Ledford A. Parnell, Jr., Fort Lauderdale, for appellant.
Frederic D. Kaufman of Frederic D. Kaufman, P.A., Coral Springs, for appellees.
KROLL, KATHLEEN J., Associate Judge.
Appellant, Mr. Gantt, appeals a final judgment of dissolution of marriage. He asserts that the trial court erred in denying his request for paternity testing as well as in finding paternity and granting support for six children. We reverse as to the blood testing.
Mr. and Ms. Gantt were married on February 14, 1992. Before their marriage, Ms. Gantt had three children:
(1) Adrian Gantt (Born June 22, 1988)
(2) Logan Gantt (born May 25, 1990)
(3) Dejon Gantt (born November 28, 1991)
After their marriage, Ms. Gantt had three more children:
(4) Alanie Gantt (born October 20, 1992)
(5) Courtney Gantt (born January 24, 1994)
(6) Chantesia Warren (born May 23, 1995)
The Gantts' marriage was dissolved on November 25, 1997. In his petition for dissolution dated November 17, 1995, Mr. Gantt claimed he was uncertain if any of the children were his. In her answer, Ms. Gantt stated the first, second, and fourth children were Mr. Gantt's, but later to the Guardian Ad Litem (GAL) she said only the first two were his.
Mr. Gantt is listed as the father on the first five children's birth certificates. Charles Warren is listed as the father on the sixth child's birth certificate. The sixth child has always lived with her mother and Charles Warren. The first five children have lived a substantial part of their lives away from Mr. Gantt. Ms. Gantt has lived apart from Mr. Gantt at various times throughout their relationship.[1]
Mr. Gantt requested blood tests be done to determine paternity as to all six children. "Approving and ratifying" the GAL's report, the trial court's order denied blood testing and found Mr. Gantt the father of all six children. The GAL report found
Even if the blood testing did show that the Movant was not the biological father of one or more of the children, there has been no evidence of other means of support for the children. That although there have been *847 allegations as it relates to possible biological fathers, their identity and location is still in question with the exception of Chantesia Warren. The evidence is clear that there would be no additional means at this time for providing support for the minor children. That certainly the children's best interest would not be served by being declared illegitimate or having paternal rights transferred to a biological father with no evidence of support.
The trial court ordered Mr. Gantt to pay child support for all six children.
This case is controlled by Daniel v. Daniel, 695 So.2d 1253 (Fla.1997) (citing Daniel v. Daniel, 681 So.2d 849, 851 (Fla. 2d DCA 1996), approved, 695 So.2d 1253 (Fla.1997)). In Daniel, the Florida Supreme Court affirmed the well settled rule of law that "`a person has no legal duty to provide support for a minor child who is neither his natural nor his adopted child and for whose care and support he has not contracted.'" Id. at 1254 (quoting Albert v. Albert, 415 So.2d 818, 820 (Fla. 2d DCA 1982)); see also Taylor v. Taylor, 279 So.2d 364 (Fla. 4th DCA 1973); Portuondo v. Portuondo, 570 So.2d 1338 (Fla. 3rd DCA 1990); Swain v. Swain, 567 So.2d 1058 (Fla. 5th DCA 1990); Bostwick v. Bostwick, 346 So.2d 150 (Fla. 1st DCA 1977).
The trial court incorrectly applied the case of Department of Health and Rehabilitative Servs. v. Privette, 617 So.2d 305 (Fla.1993). The Florida Supreme Court has limited Privette to instances where a "`legal father' also faces the threat of losing parental rights which he seeks to maintain." Daniel, 695 So.2d at 1255. In Privette, a state agency sought to obtain child support against an alleged biological father who was not the child's legal father. In fact, the man listed on the child's birth certificate, who was married to the mother at the time of the child's birth, was not a party to that action. In this case, Mr. Gantt brings the action questioning his parental status. His request for blood tests as to all six children should be granted.
In the event the results of any of the blood tests are negative and the mother continues to seek support, the trial court should determine if the circumstances justify a deviation from the "established rule of law" quoted above or present an exception to its application. See Daniel, 695 So.2d at 1254.
Accordingly, the trial court shall enter an order granting appellant's request for blood tests as to all six children.
REVERSED AND REMANDED for further proceedings consistent with this opinion.
FARMER and STEVENSON, JJ., concur.
NOTES
[1] Louvenia Holzendorf is the maternal grandmother with whom some of the children have lived for long periods of time.