722 So.2d 941 (1998)
Robbie LEFLER, Appellant,
v.
Christine LEFLER and Edward Church, Appellees.
No. 97-4077.
District Court of Appeal of Florida, Fourth District.
December 30, 1998.
*942 Howard K. Heims, and Virginia P. Sherlock of Littman, Sherlock & Heims, P.A., Stuart, for appellant.
Ileana Haedo of Law Offices of Anthony B. Borras, P.A., Lauderhill, for appellee Christine Lefler.
Brion Blackwelder of Nova Southeastern University, Fort Lauderdale, for Guardian Ad Litem.
PER CURIAM.
In the court below, appellant filed a petition to modify a final judgment of dissolution of marriage, seeking to establish that he is not the biological father of a child born during the marriage. Part of the petition is a paternity action which prays for the relief that Edward Church be "declared the biological and legal father" of the child.
We reverse the trial court's order denying a blood test. See Daniel v. Daniel, 695 So.2d 1253 (Fla.1997); Gantt v. Gantt, 716 So.2d 846 (Fla. 4th DCA 1998).
We affirm the trial court's dismissal of Edward Church as a party to this proceeding. Under section 742.011, Florida Statutes (1997), appellant does not have standing to initiate a paternity action; he is neither a "woman who is pregnant or has a child," nor "any man who has reason to believe that he is the father of a child." Id. Nor is appellant acting on behalf of the child in this action. Church is not a proper party to the postjudgment proceedings in this dissolution action.
As the trial court noted, the relief requested in the petition is perplexing and fraught with difficult social issues. This opinion does not address the propriety of any relief and is limited to the two narrow issues discussed in the preceding paragraphs.
GROSS, J., and BAILEY, JENNIFER D., Associate Judge, concur.
KLEIN, J., concurs specially with opinion.
KLEIN, Judge, concurring specially.
I agree with the majority opinion, but I am writing separately because I believe that having to apply Daniel to the facts in this case demonstrates a compelling need for legislation. As the Florida Supreme Court observed in Shands Teaching Hospital and Clinics, Inc. v. Smith, 497 So.2d 644, 646 (Fla.1986), "of the three branches of government, the judiciary is the least capable of receiving public input and resolving broad public policy questions based on a societal consensus." The issues involved in this case are, in my opinion, precisely the type of issues contemplated by the court in Shands.
Robbie and Christine Leffler were married in 1985 and Christine gave birth to a son on June 14,1988. Their marriage was dissolved in 1990 with Christine being designated the primary residential parent. Robbie was awarded visitation and ordered to pay child support. He exercised his visitation rights and paid child support, but subsequently remarried and now has other children to support.
At the end of 1995, Robbie had come to suspect that he was not the father of the child and, during a visitation, had blood tests performed on his own, which allegedly show that he is not the father. He then filed a motion to modify the final judgment of dissolution of marriage, asking the court to determine that he was not the father and had no obligation to pay child support.
The trial court decided this case under the principles set forth by the Florida Supreme Court in Department of Health & Rehabilitative Services v. Privette, 617 So.2d 305 (Fla. 1993). Under Privette a trial court can deny a court-ordered blood test if it finds that the child's best interests would not be served "by being declared illegitimate and having parental rights transferred to the biological father." Id. at 309. Privette also authorizes a trial court to maintain the status quo, if it is in the child's best interests, even if the "legal father is proven not to be the biological *943 father." Id. at 309. The trial judge in this case, after a Privette hearing, denied Robbie any relief.
Privette, though, was significantly narrowed in Daniel v. Daniel, 695 So.2d 1253 (Fla.1997). In Daniel the husband knew that his wife was pregnant with the child of another man when he married her. In their dissolution proceeding they stipulated that he was not the biological father, but the trial court required him to pay child support. Ultimately the case reached the Florida Supreme Court, and it redefined illegitimacy, holding that a child born into a marriage did not become illegitimate if the husband in that marriage was determined not to be the father. It also limited Privette to cases in which the child (1) could become illegitimate, and (2) the legal (marital) father is threatened with losing parental rights which he seeks to maintain. Daniel, 695 So.2d at 1255. The supreme court remanded the case back to the trial court to grant relief to the husband. Daniel requires us to reverse.
The child in the present case is now ten years old. I strongly believe that the legislature should consider whether, with this much time having gone by, a marital father should be allowed to bring this type of action. Marital fathers have been held to be barred by estoppel from denying paternity, but the fathers in those cases, unlike Robbie, had known they were not the biological fathers from the beginning. Marshall v. Marshall, 386 So.2d 11 (Fla. 5th DCA 1980) and Wade v. Wade, 536 So.2d 1158 (Fla. 1st DCA 1988). Robbie's claim may not be barred by laches either, if he had no knowledge that he was not the biological father. Van Meter v. Kelsey, 91 So.2d 327 (Fla.1956)(one of the elements necessary for laches to bar a claim is that the party had knowledge and has thus not asserted rights in a timely manner). The common law, accordingly, may be inadequate to deal with these facts.
In Privette the Florida Supreme Court observed:
It is conceivable that a man who has established a loving, caring relationship of some years' duration with his legal child later will prove not to be the biological father. Where this is so, it seldom will be in the best interests to wrench them away from their legal fathers and judicially declare that they now must regard strangers as their fathers. The law does not require such cruelty toward children.
Privette, 617 So.2d at 309. The above statement accurately describes the factual situation in the present case. The Daniel court, though, was persuaded to all but do away with Privette, because of a competing policy, which is that "a person has no legal duty to provide support for a minor child who is neither his natural nor his adopted child and for whose care and support he has not contracted." Daniel, 695 So.2d at 1254.
As the majority in the present case points out, this trial judge found that "the relief requested in the petition is perplexing and fraught with difficult social issues." This same view has been advanced by Judge Altenbernd in an article entitled "Quasi-Marital Children: The Common Law's Failure in Privette and Daniel calls for Statutory Reform."[1] Judge Altenbernd concludes that the availability and accuracy of genetic testing has rendered the common law inadequate to resolve the problems which can arise when a child is born to a woman who is married, but her husband is not the biological father.
One of the points made by Judge Altenbernd is that genetic testing is becoming more and more commonplace, for reasons other than determining who is a biological parent. He notes that it is estimated that as many as ten percent of all children born in wedlock have a biological father different from the marital father.[2] Under Daniel, as marital fathers discover they are not the biological fathers, they will be able to have their parental responsibilities terminated, regardless of the age of the child or the availability of the biological father as a replacement.
*944 California has adopted legislation which allows determinations of paternity based on scientific testing only during the first two years of the child's life. Thereafter, there is a conclusive statutory presumption that the child is a child of the marriage. California Code, § 7540 and 7541. That conclusive presumption has been held constitutional. Michael H. v. Gerald D., 491 U.S. 110,109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). In Michael H. the biological father was seeking to be declared the father of a child conceived and born while the mother was married, over the objection of the marital father. It is apparent from the Supreme Court's opinion in Michael H. that it found these social issues difficult and that they were appropriately addressed by the legislature. 491 U.S. at 131,109 S.Ct.2333.
Judge Altenbernd has proposed a number of revisions to Chapter 742 in his thesis, one of which is similar to the California conclusive presumption. He also addresses other problems created by Daniel, including the fact that the law does not now provide for the alleged biological father to be joined in proceedings such as this one or, when Daniel is applied, what is to be done about the name of the father on the child's birth certificate. I hope that our legislature will consider these issues.
NOTES
[1] This article will be published in Vol. 26, Issue 2 of the Florida State University Law Review in early 1999. The article is being adapted from a thesis written by Judge Altenbernd in partial fulfillment of the requirements for the degree of Masters of Law in the Judicial Process at the University of Virginia.
[2] Citing, Jared Diamond, The Third Chimpanzee, 85 (Harper Collins 1992).