736 So.2d 782 (1999)
D.F., Appellant,
v.
DEPARTMENT OF REVENUE ex rel. L.F., Appellee.
D.F., Appellant,
v.
L.F., Appellee.
Nos. 98-03038, 98-02432.
District Court of Appeal of Florida, Second District.
July 9, 1999.
*783 Peter N. Meros, St. Petersburg, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jon J. Johnson, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Acting Chief Judge.
D.F., the former husband and legal father in these consolidated cases, appeals two orders from two different circuit courts. The orders increase the amount of his child support obligation and bar him from challenging paternity at this time. We consolidate these appeals for purposes of this opinion, and affirm both judgments. We hold that, under these circumstances, D.F. cannot reopen his divorce proceeding to obtain a re-determination of paternity more than nine years after the entry of the final judgment of dissolution. We further hold that the child's maternal grandparents, with whom the child may reside, are not indispensable parties to an action seeking an increase in child support.

I. THE PASCO COUNTY DIVORCE PROCEEDING
D.F. and L.F. were married in Virginia in 1986. About three months later, L.F. gave birth to a child in Virginia. The couple then moved to Florida. Shortly after the child's second birthday, D.F. filed a petition for dissolution of marriage in Pasco County. D.F. alleged that the child was a marital child, that the parties should have shared parental responsibility for the child, and that the maternal grandparents should have "primary residential custody."
The couple signed a marital settlement agreement that provided the couple would have shared parental responsibility of the child, but that L.F. would have primary residential custody. The agreement provided that D.F. would pay child support in the amount of $40 per week to the maternal grandparents, "as the minor child is currently residing in their household."
The circuit court entered a final judgment on September 28, 1988, incorporating the settlement agreement, but also providing that the maternal grandparents would provide "primary physical residence" for the child. Apparently, the trial court intended to give the mother "primary residential custody" of the child, from the standpoint of parental decision-making, with the understanding that the child would actually live in the grandparents' home. The grandparents were not parties to this divorce proceeding. In the final judgment, child support was payable directly to the grandparents.
In March 1991, L.F., through the Department of Health and Rehabilitative Services, filed a motion for contempt and for an income deduction order. As a result of a stipulation signed by D.F., the court *784 entered an income deduction order. This order redirected the payment of D.F.'s child support obligation to the clerk of circuit court. The order did not specify whether L.F. or the maternal grandparents were to receive these payments from the circuit court. The maternal grandparents were not parties to this proceeding, and D.F. did not object to their absence.[1]
On July 21, 1997, the Department of Revenue (the "Department"), on behalf of L.F., filed a petition in the Pasco County dissolution proceeding to increase D.F.'s child support obligation. In conjunction with this filing, L.F. signed an affidavit stating that she was the custodian of the child. From the Department's petition, it is unclear whether L.F. has received welfare benefits for the child or whether she is otherwise entitled to receive assistance from the Department in this case. D.F. filed a response to this petition alleging that he was not the biological father of the child and claiming that venue was proper in Pinellas County, where he now resides. His response further claimed that both a putative father and the grandparents were indispensable parties to the action to modify child support. Thus, D.F. first raised the issue of biological fatherhood in this dissolution proceeding nine years after the entry of the final judgment, at a time when the child was eleven years old.
The Pasco County dissolution action was stayed while an action challenging paternity, which is described later in this opinion, was pending in Pinellas County. After that action was dismissed, the Pasco County Circuit Court entered an order increasing D.F.'s child support obligation to $421 per month. This amount is appropriate under the child support guidelines. The order requires the support to be paid to the clerk of circuit court, and does not specify who is entitled to receive the distribution from the clerk. D.F. appeals this order, arguing only that the maternal grandparents are indispensable parties.
Both L.F. and the Department have standing to bring this action for the benefit of the child. See § 409.2557(2), Fla. Stat. (1997); Fla. R. Civ. P. 1.210; Sprunger v. Sprunger, 534 So.2d 925 (Fla. 4th DCA 1988) (holding mother has standing to pursue support although adult dependent child resided elsewhere at times). D.F. has not alleged that L.F. does not currently have primary residence of or parental responsibility for her child, or that either L.F. or the Department is using his payments for other than valid child support purposes. The Pasco County order merely increases the amount of child support to meet the current child support guidelines. See § 61.30, Fla. Stat. (1997). Even if the child still resides with the maternal grandparents, the grandparents are not parties whose interest in the subject matter is such that a complete and efficient determination of the equities and rights of the other parties is not possible without their joinder.[2]See Allman v. Wolfe, 592 So.2d 1261 (Fla. 2d DCA 1992). The child support guidelines were properly calculated without the grandparents' joinder based upon the incomes of the two parents responsible for the support of the child, and any information they possessed regarding special needs of the child was available through discovery or by calling them as witnesses.

II. THE PINELLAS COUNTY ACTION TO TERMINATE D.F.'S STATUS AS LEGAL FATHER
On July 25, 1997, fours days after the Department of Revenue filed its petition *785 in the Pasco County dissolution proceeding, D.F. filed a "Supplemental Petition to Terminate Support or to Set Aside Judgment" in Pinellas County. The petition attached and incorporated the final judgment of dissolution. The action is not styled as a paternity action, and actually seeks to reverse a prior determination of paternity.[3] The petition affirmatively alleges that D.F. never had sexual relations with L.F. prior to January 1986, and could not possibly be the child's biological father.[4] Accordingly, his own pleading establishes that D.F. knew about the issue of biology prior to the marriage in March 1986 and prior to the divorce in 1988.
Apparently, the Department is not required to represent litigants such as L.F. in such ancillary proceedings, even if that litigation is the result of the Department's filing. Thus, a clerk's default was entered in this action against L.F.[5] With no one representing the child and a default in place against L.F., the trial court entered an order requiring the mother and child to undergo DNA testing. The trial court apparently concluded this was permissible in light of Daniel v. Daniel, 695 So.2d 1253 (Fla.1997). L.F. complied with this order, and the results supported D.F.'s position on the issue of biological fatherhood.
Prior to the conclusion of the Pinellas County case, during a hearing on March 10, 1998, at which no one was present to represent the mother or child, the trial judge, Marion L. Fleming, realized that the case presented some serious legal issues and determined that another action was pending in Pasco County. She obtained the Pasco County court file and reviewed the divorce pleadings. Thereafter, Judge Fleming concluded she had erroneously entered the order requiring DNA testing. She entered an order denying and dismissing D.F.'s petition, finding that D.F. had contracted to support the child in 1988 and was estopped in 1998 by the 1988 judgment to contest paternity.[6] *786 She ruled that D.F. had pleaded no issue of extrinsic fraud or any other basis that might allow him to seek relief from the 1988 judgment of dissolution in 1997. Accordingly, she held that the issue of paternity could not be challenged based on res judicata. Following a rehearing in which the trial court confirmed these conclusions, D.F. appealed.
It is possible that D.F. is obligated to support this child, who is now almost a teenager, as a matter of contract law. It is also possible that he is equitably estopped to deny paternity after allowing himself to be the legal father of this child for more than a decade while having actual knowledge that he was not the biological father. See Wade v. Wade, 536 So.2d 1158 (Fla. 1st DCA 1988); Marshall v. Marshall, 386 So.2d 11 (Fla. 5th DCA 1980). We simply hold that he is barred by res judicata due to the judgment of dissolution. See State, Dep't of Health & Rehabilitative Servs. v. Robison, 629 So.2d 1000 (Fla. 3d DCA 1993); State, Dep't of Health & Rehabilitative Servs. v. Wright, 498 So.2d 1008 (Fla. 2d DCA 1986); Johnson v. Johnson, 395 So.2d 640 (Fla. 2d DCA 1981). Nothing in Daniel or Department of Health & Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993), changes the law announced in Johnson, Wright, and Robison. This court reconfirmed the principles announced in Johnson, Wright, and Robison in State, Department of Revenue v. Harris, 684 So.2d 231 (Fla. 2d DCA 1996) (holding trial court has no jurisdiction to consider setting aside final judgment fourteen years after paternity was determined), and State, Department of Revenue v. Pough, 723 So.2d 303 (Fla. 2d DCA 1998) (granting certiorari and quashing order of trial court directing DNA testing six years following final judgment of paternity); but see Lefler v. Lefler, 722 So.2d 941 (Fla. 4th DCA 1998) (reversing trial court's denial of blood test more than five years after judgment of dissolution). D.F. had the knowledge and opportunity to litigate this issue in 1988. We recognize that our decision appears to be in direct and express conflict with the majority opinion in DeRico v. Wilson, 714 So.2d 623 (Fla. 5th DCA 1998), but we choose to agree with Judge Harris's dissent in that case.
Affirmed.
WHATLEY and GREEN, JJ., Concur.
NOTES
[1] From the record, it is unclear where the child currently resides. We suspect that the mother and child moved from the grandparental residence years ago, but there is nothing establishing this fact in these cases.
[2] The order presently on appeal did not redirect the payments from the maternal grandparents to the central governmental depository. As described above, that occurred in 1991 without objection from D.F. Therefore, any assertion that the grandparents were indispensable parties in that proceeding has been waived and may not be raised in this appeal. See Valparaiso Realty Co. v. City of Valparaiso, 473 So.2d 1 (Fla. 1st DCA 1985).
[3] A paternity action is not actually filed to determine the identity of a child's biological father. It is filed to establish a legal father, a person who will be legally responsible to support the child to some extent. Although a paternity action is normally determined on the basis of biology, that is not always the case. Here, both the child's birth certificate and the divorce judgment served to establish paternity. Thus, technically, a paternity action could not be filed by D.F. See § 742.011, Fla. Stat. (1997) (action may be brought to determine paternity "when paternity has not been established by law or otherwise"). His action was intended not to establish paternity, but to set aside a prior determination of paternity. See generally Department of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305 (Fla.1993).
[4] The author of this opinion has elsewhere described such a child as a Type I quasi-marital child. See Chris W. Altenbernd, Quasi-Marital Children: The Common Law's Failure in Privette and Daniel Calls for Statutory Reform, 26 Fla. St. U.L.Rev. 219 (1999).
[5] There was an issue in the trial court concerning whether D.F.'s counsel adequately notified the Department's counsel in the Pasco County action concerning the Pinellas action. We have no reason to doubt that D.F.'s counsel advised the Department of the proceeding and that office simply declined to protect L.F. in the action. The Department ultimately represented L.F. in both appeals to this court, but it never claimed a responsibility to represent L.F. in the Pinellas County matter. If the State has an interest in protecting children and providing them with support, we question the wisdom of any statute that prevents the Department from protecting the mother and child in an action similar to the Pinellas County action, which was clearly precipitated by the pleadings filed by the Department.
[6] We recognize that res judicata is typically an affirmative defense raised by a defendant. See Bolz v. State Farm Mut. Auto. Ins. Co., 679 So.2d 836 (Fla. 2d DCA 1996). However, we find no fault with the trial court's decision to raise this issue on its own. First, the petition incorporated the judgment of dissolution and thus, on its face, disclosed that the relief requested was barred by res judicata. See Duncan v. Prudential Ins. Co., 690 So.2d 687 (Fla. 1st DCA 1997) (permitting dismissal on grounds of res judicata where trial court has complete history of prior litigation). In addition, the trial court has a responsibility when presented with such a petition to guard the best interests of the child. See § 61.13(1)(a), Fla. Stat. (1997). This is particularly true in a case such as this, when the court file contained a default against the parent who might otherwise fulfill that role. If anything. Judge Fleming should be praised for her actions in this regard.