776 So.2d 319 (2001)
Robbie LEFLER, Appellant,
v.
Christine LEFLER, Appellee.
No. 4D99-3305.
District Court of Appeal of Florida, Fourth District.
January 3, 2001.
Rehearing Denied February 5, 2001.
*320 Howard K. Heims and Virginia P. Sherlock of Littman, Sherlock & Heims, P.A., Stuart, for appellant.
Matthew D. Bavaro of The Law Offices of Bavaro & Golden, P.A., Fort Lauderdale, for appellee.
STONE, J.
We affirm a final order denying Robbie Lefler's petition to determine paternity and to modify final judgment. The trial court did not err in finding an absence of extrinsic fraud and in concluding that, based on the circumstances found, the final judgment of dissolution of marriage is res judicata as to the issue of paternity.
Robbie and Christine Lefler (former husband and former wife, respectively) were married in 1985; in June 1988, a child was born. The marriage was dissolved in 1990 in Alaska; child support was agreed on, and the former husband raised no question as to the paternity of the child at that time. In 1995, the former husband learned through DNA testing that he was not the biological father of the child. He then petitioned to modify the final judgment by reason of extrinsic fraud.
During the proceedings, the former husband served a request for admissions on the former wife. The request for admissions included requests to admit:
2. Prior to her divorce from Robbie Lefler, Christine Lefler represented to Robbie Lefler that [the child] was his biological son.
* * *
4. Christine Lefler never told Robbie Lefler that he was not the biological father....
* * *
10. Christine Lefler deliberately concealed the identity of [the child's] biological father from Robbie Lefler prior to and subsequent to the divorce.

*321 * * *
13. Christine Lefler knew prior to the divorce that Robbie Lefler was not the biological father....
The former wife failed to respond to the requests for admissions. Her attorney argued that she had filed a motion to strike and to quash the requests; however, none appears in the record. Hence, the trial judge ruled that the requests be deemed admitted.
At the hearing on the former husband's motion, he acknowledged that in 1987, he learned that the former wife was having an affair in the early part of that year. The former husband further testified that after he discovered the affair and the former wife swore that it was over, the parties decided to work out their problems.
The former wife testified that during her marriage, she had sexual intercourse with a man named Robin, but stated she "did not recall it being around the time [the child] was conceived." She admitted, however, that Robin might be the child's father, but denied having an affair with another man whom the former husband believed to be the biological father.
The former wife further testified that prior to the DNA tests in this action, she did not know that the former husband was not the biological father. She also denied intentionally telling the former husband that he was the father in order to obtain child support.
The trial judge found that "[t]he former wife had disclosed a prior affair to the former husband which had occurred shortly before the conception of the minor child." The court also found that the former wife did not know that the former husband was not the biological father and, therefore, did not conceal the paternity of the child from the former husband. Additionally, the trial court found that the former husband was aware of the former wife's affair during the marriage, yet did not question paternity at the time. The trial court, accordingly, concluded that the final judgment of dissolution of marriage is res judicata as to the issues presented and found that there was no extrinsic fraud in this case.
Florida Rule of Civil Procedure 1.540(b), applicable to family court proceedings pursuant to Florida Family Law Rule 12.540, permits a party to bring an independent action to set aside a judgment for fraud upon the court after one year from the final judgment. Fraud upon the court has been defined as extrinsic, not intrinsic, fraud. See DeClaire v. Yohanan, 453 So.2d 375 (Fla.1984); Gordon v. Gordon, 625 So.2d 59 (Fla. 4th DCA 1993).
In DeClaire, the supreme court recognized that extrinsic fraud involves conduct which is collateral to the issues tried in a case, and defined extrinsic fraud as:
prevention of an unsuccessful party [from] presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on. In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause.
Id. at 377 (citations omitted). The court defined intrinsic fraud as:
fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried. This Court, consistent with the general rule, has expressly held that false testimony given in a proceeding is intrinsic fraud. We have stated that [i]f a judgment was obtained upon false testimony or a fraudulent instrument and the parties were heard, the evidence submitted to and received consideration by the court, then it may be said that the matter has been actually tried, or was so in issue that it might *322 have been tried and the parties are estopped to set up an intrinsic or direct fraud to vitiate the judgment, because the judgment is the highest evidence and cannot be contradicted by the parties to it.
Id. (citations omitted). In DeClaire, the court held that false financial affidavits submitted by a husband in a dissolution proceedings constituted intrinsic, not extrinsic, fraud, and the court, therefore, could not form the basis to attack a final judgment after one year. See id.[1]
We conclude, as did the trial court, that the former husband has failed to establish a case of extrinsic fraud. See Cerniglia v. Cerniglia, 679 So.2d 1160 (Fla. 1996); DeClaire. In Cerniglia, the husband allegedly abused the wife and thereby obtained her agreement to a property settlement by means of duress. The supreme court applied the definitions of extrinsic and intrinsic fraud found in DeClaire and held that the husband's conduct constituted intrinsic fraud, thus, subjecting the wife to the one year period of limitations in moving to set aside the final judgment. See Cerniglia. The court also based its decision on the public policy favoring termination of litigation after trial and appeal of the court's judgment. See id. at 1164. Following Cerniglia, even if the trial judge here relied on the admissions alone, rather than considering the wife's testimony, the wife's failure to disclose the child's true parentage would not constitute extrinsic fraud, regardless of whether her silence was relied on by the husband in entering into a marriage settlement agreement as to child support. See also Wescott v. Wescott, 444 So.2d 495 (Fla. 2d DCA 1984) (former husband's alleged perjury at the dissolution hearing regarding his income and assets found to be classic example of intrinsic fraud).
We recognize that in M.A.F. v. G.L.K., 573 So.2d 862 (Fla. 1st DCA 1990), the district court determined that the wife's concealment of the true parentage in that case constituted extrinsic fraud upon the court, such that the husband's petition to set aside would not be barred by res judicata or the one year period of limitations found in rule 1.540(b). See id. We have also considered M.L.B. v. Department of Health and Rehabilitative Services, 559 So.2d 87 (Fla. 3d DCA 1990), where the court held that failure of the department to disclose significant facts regarding an adopted child's mental health may constitute extrinsic fraud. See id.
We distinguish M.L.B., however, as that case involved a state agency and adoptive parents, parties who may not have been operating on a level playing field. We also distinguish M.A.F., as in this case, the trial judge specifically found that the husband had reason to question the child's parentage but did not act, a finding which was supported by competent substantial evidence. Therefore, if any fraud was committed, the circumstances herein point to a finding of intrinsic rather than extrinsic fraud.
Several decisions involving attempts to set aside judgments of paternity have addressed the issue of extrinsic versus intrinsic fraud in that context. See, e.g., Dep't. of Revenue v. Edden, 761 So.2d 436 (Fla. 3d DCA 2000). In Edden, eleven years after a judgment adjudicating paternity premised on the mother's affidavit, the father sought to set aside the judgment based on newly discovered evidence that he was not the biological father. The court held that he was "barred by estoppel and res judicata from raising the issue of a fraud upon the court," reasoning that "Edden had reason to believe that he was not the biological father, and thus had the opportunity to defend against [the mother's] *323 allegations." Id. at 438. See also Dep't of Revenue v. Sullivan, 727 So.2d 1085 (Fla. 2d DCA 1999); Vereen v. Vereen, 581 So.2d 1004 (Fla. 1st DCA 1991). Here, as in Edden, if any fraud existed, it was not extrinsic and could not form the basis for overturning the judgment more than one year after rendition. See also Dep't of Revenue v. Pough, 723 So.2d 303 (Fla. 2d DCA 1998); Dep't of Revenue v. Harris, 684 So.2d 231 (Fla. 2d DCA 1996).
The former husband claims, however, that the final judgment of dissolution of marriage cannot be deemed res judicata here, as that defense was not specifically pled.
It is well-settled that
[I]n order for res judicata to bar a subsequent suit, the following four identities must be present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties; and (4) identity of the quality or capacity of the persons for or against whom the claim is made.
Wisconsin v. Martorella, 670 So.2d 1161, 1162 (Fla. 4th DCA 1996). We recognize that, generally, res judicata must be pled in an answer as an affirmative defense. See Weiner v. Savage, 407 So.2d 288 (Fla. 4th DCA 1981). However, in D.F. v. Department of Revenue, 736 So.2d 782 (Fla. 2d DCA 1999), where a father brought suit to terminate support or set aside an 11-year-old judgment of dissolution of marriage on the issue of paternity, the court approved the application of the principle of res judicata despite the mother's failure to affirmatively plead that defense. The court reasoned that the judgment of dissolution was incorporated in the petition; therefore, it was apparent from the face of the pleadings that res judicata barred the claim. See id. Here, the judgment of dissolution was incorporated in the pleadings; therefore, the former husband was patently on notice that the continued viability of that judgment would be at issue in the case. We also note that the former wife argued res judicata to the trial court, without objection, in her written closing argument.
In any event, the trial court's reference to res judicata in this instance is essentially an expression of the court's decision that the final judgment which determined paternity could not be set aside absent extrinsic fraud. Therefore, even accepting that the court erroneously considered the defense of res judicata, its ultimate decision, that the final judgment could not be set aside after one year because no extrinsic fraud was present, is, nonetheless, correct.
The former husband also argues that this court's prior decision involving these parties, Lefler v. Lefler, 722 So.2d 941 (Fla. 4th DCA 1998), established the law of the case. However, our opinion in Lefler involved only the question of whether the trial judge should have ordered a blood test and whether the alleged biological father should be a party to the proceeding. See id. Moreover, in that opinion, the court specifically limited its decision to the issues addressed. See id. Therefore, this court's prior Lefler decision did not establish the law of the case with regard to whether the final judgment of dissolution of marriage could be set aside on the issue of paternity, nor did it indicate, as argued by the former husband, that Daniel v. Daniel, 695 So.2d 1253 (Fla.1997), would control as to the ultimate question at issue in this appeal. We note that this case is factually distinguishable from Daniel.
While Daniel makes it abundantly clear that despite a child's birth during the parties' marriage, the husband, who is admittedly not the child's biological father, should not be required to support the child, in Daniel, the question of the child's parentage was addressed at the time of dissolution. By contrast, in this case, the question of parentage was not raised until five years after the final judgment of dissolution, requiring consideration of the *324 competing policy in favor of finality of judgments.
We note that in DeRico v. Wilson, 714 So.2d 623 (Fla. 5th DCA 1998), relying on Daniel, the court held that a petition to terminate support, based on lack of parentage, filed one and one half years after the judgment of dissolution, should have been granted. See id. The court in DeRico, however, did not address the question of extrinsic fraud. Further, the Second District, in Anderson v. Anderson, 746 So.2d 525 (Fla. 2d DCA 1999), rev. granted, 760 So.2d 945 (Fla.2000), has disagreed and has certified conflict with DeRico.
In this case, the trial judge found that the former husband had reason to suspect the child's true parentage, a finding which is supported by competent substantial evidence. To hold otherwise would allow a husband who has reason to suspect infidelity to defer raising that question for longer than the one year limit on intrinsic fraud at his whim. We can discern no reason for recognizing such an exception to established finality policy. Therefore, the order is affirmed.
GUNTHER and POLEN, JJ., concur.
NOTES
[1] While not applicable to this case, it should be noted that DeClaire has been superseded in this respect by amendments to Florida Rule of Civil Procedure 1.540(b) and Florida Family Law Rule 12.540, which eliminates the one year rule for cases of false financial affidavits in a family law case.