845 So.2d 870 (2003)
Michael ANDERSON, Petitioner,
v.
Cathy ANDERSON, Respondent.
No. SC00-59.
Supreme Court of Florida.
January 9, 2003.
Rehearing Denied May 6, 2003.
Catherine M. Catlin and Raymond T. Elligett, Jr. Of Schropp, Buell & Elligett, P.A., Tampa, FL, for Petitioner.
Thomas D. Casper, Tampa, FL, for Respondent.
Thomas E. Warner, Solicitor General, and T. Kent Wetherell, II, Deputy Solicitor General, Tallahassee, FL, for the Attorney General and the State of Florida, Amicus Curiae.
PER CURIAM.
We have for review Anderson v. Anderson, 746 So.2d 525 (Fla. 2d DCA 1999), which certified conflict with the opinion in DeRico v. Wilson, 714 So.2d 623 (Fla. 5th DCA 1998). We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. For the reasons expressed in this opinion, we approve the result of the decision below.
This is another case requiring the Court to define the law regarding a child support obligation of a husband who is not the biological father of the child. The narrow issue for our review concerns the proper application of Florida Rule of Civil Procedure 1.540 to the facts of the present case. In February of 1994, Michael and Cathy Anderson were married when Cathy was already pregnant. In October of 1995, Cathy petitioned for dissolution, about a year and a half after the child was born. An amended final judgment of dissolution of marriage was entered in December 1996, wherein Michael was ordered to pay child support. Without court order, Michael subsequently submitted himself and the child for DNA testing. The results of the DNA test excluded Michael as the biological father. In May of 1997, Michael filed a motion, pursuant to Florida Family *871 Law Rule 12.540,[1] for relief from the dissolution judgment and his duty to pay child support. Michael argued in his motion that Cathy had misrepresented that the child was his. The case proceeded to an evidentiary hearing before a general master.
The following facts were revealed during the evidentiary hearing. At some point during the divorce proceeding, Michael received a call from Cathy's sister, who pointed out to Michael that Cathy, unbeknownst to Michael, was involved in a previous marriage. Michael confronted Cathy regarding this information, but Cathy denied having been married before. Michael, however, had already secured a copy of the marriage certificate, so he knew Cathy was lying. Michael proceeded to ask Cathy whether he was the father of the child, and she answered "yes." Michael testified that despite this encounter and learning that Cathy was untruthful about the previous marriage, he still had no doubt that he was the father of the child. He testified that the first time he had any doubt was when he received the results of the DNA test. Cathy testified that she did not have a sexual relationship with anyone other than Michael during the time that the child was conceived.
The general master did not admit the DNA test into evidence. The general master concluded that the test was only relevant if Michael could first establish that Cathy had committed fraud or misrepresentation. In his final report, the general master concluded that Michael "failed to prove by a preponderance of the evidence that he had been defrauded into believing that the minor child was his." The general master stated that "no evidence was adduced that [Cathy] knew, when she first told him of the pregnancy, that he was not the father of the child." Finally, the general master concluded that all of the information which led Michael to have a suspicion regarding his paternity was known at the time that the dissolution proceeding was pending, and that no information came to him after the amended final judgment was entered that he did not know before it was entered. The general master pointed out that even though Michael testified that he had no doubt that the child was his, he obviously had some suspicion or he would not have obtained the DNA test. The circuit court adopted the report of the general master and the Second District Court of Appeal affirmed, concluding that the divorce decree established paternity and is res judicata in future proceedings. See Anderson v. Anderson, 746 So.2d 525 (Fla. 2d DCA 1999). The district court certified conflict with DeRico v. Wilson, 714 So.2d 623 (Fla. 5th DCA 1998).
In D.F. v. Department of Revenue, 823 So.2d 97 (Fla.2002), this Court recently held that a final judgment of dissolution of marriage which establishes a child support obligation for a former husband is a final determination of paternity and any challenge to this determination must be brought under the provisions of rule 1.540.[2] Consistent with D.F., in order to *872 challenge paternity in the present case, Michael was required to comply with rule 1.540. Although Michael filed his challenge within the one-year window provided by rule, the general master determined that Michael had failed to establish that he was defrauded by Cathy. There is competent, substantial evidence in the record to support this conclusion. Cf. Garcia v. Garcia, 743 So.2d 1225 (Fla. 4th DCA 1999) ("Where a general master has been appointed for fact-finding and to recommend disposition of pending issues, the trial court is bound by the general master's factual findings unless they are not supported by competent substantial evidence or are clearly erroneous."). Accordingly, we approve the result of the decision below.
It is so ordered.
WELLS and QUINCE, JJ., and HARDING, Senior Justice, concur.
ANSTEAD, C.J., concurs in result only.
PARIENTE, J., dissents with an opinion, in which, LEWIS, J., concurs.
SHAW, Senior Justice, dissents.
PARIENTE, J., dissenting.
I dissent because I conclude that Cathy Anderson's unequivocal, affirmative response to Michael Anderson that the child was his constituted a misrepresentation under Florida Rule of Civil Procedure 1.540(b)(3), as incorporated in Florida Family Law Rule of Procedure 12.540.[3] In light of this affirmative misrepresentation, it was error to refuse to set aside the final judgment of dissolution in this case based on his timely filed postjudgment motion.
*873 Unlike the petitioner in D.F. v. Department of Revenue, 823 So.2d 97 (Fla.2002), Michael's challenge to paternity in this case was properly brought as a postjudgment action within the one-year window set forth in rule 1.540(b). Michael timely filed his motion seeking relief from the dissolution judgment and his duty to pay child support in May of 1997, only five months after the final judgment. Michael argued in his motion that Cathy misrepresented that the child was his.
Rule 1.540(b)(3) does not limit relief to instances of "fraud," but includes "misrepresentations, or other misconduct of an adverse party." In contrast to rule 1.540(b)(2), which pertains to "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing," subdivision (b)(3) does not specify a due diligence component. Fla. R. Civ. P. 1.540(b)(2)-(3) (emphasis supplied).
The undisputed facts are that prior to the marriage, Cathy affirmatively represented to Michael that he was the father of her child. After Cathy filed for divorce, she again affirmatively stated that the child was his in response to a direct question by Michael. The majority focuses on the fact that Michael should have been suspicious because of Cathy's untruthful answers about whether she had been previously married. However, a father should be able to rely on the unequivocal, affirmative representations of his wife that he is the father of her child, and should not be obligated to request DNA testing during the divorce action to disprove this presumed fact. If Michael had made a formal request for admissions and Cathy had admitted that he was the father the child, Michael would have every right to rely on this formal admission. I see no practical difference between that hypothetical situation and the facts in this case.
It appears that the general master and the trial court determined that Cathy did not engage in fraud or misrepresentation because "no evidence was adduced that [Cathy] knew, when she first told him of the pregnancy, that he was not the father of the child." Majority op. at 871. In fact, the majority references Cathy's testimony that "she did not have a sexual relationship with anyone other than Michael during the time the child was conceived." Id. However, we cannot ignore the facts of life, and clearly Cathy had at least one other sexual partner at the time of conception. Simply put, her answer was deceptive and constituted an actionable misrepresentation.
Moreover, this is not a case of "don't ask, don't tell." Cathy affirmatively told Michael not once, but twice that he was the father of the child. Unless this Court establishes as an unequivocal rule that there must be a DNA test in every dissolution of marriage proceeding, which the Court has yet to mandate, I would conclude that a husband who asks his wife a direct question as to the child's paternity has the right to rely on the affirmative response of his wife that he is the child's father.
I thus disagree with the result reached by the majority because I conclude that there was no competent, substantial evidence to support the trial court's refusal to set this judgment aside. Cathy's unequivocal, affirmative answer in response to Michael's question of whether he was the child's father constituted a misrepresentation under rule 1.540(b)(3), entitling Michael to set aside the final dissolution judgment in this case.
As I stated in my concurrence in D.F., 823 So.2d at 101-03, this area of the law involves complex policy issues and many differing factual patterns. In my view, however, in this case the issue is straightforward. The existing procedural rules *874 require that Michael's child support obligation should be set aside in light of the fact that the child he has been ordered to support is not his and he acted in a timely manner in moving to set the child support order aside.
LEWIS, J., concurs.
NOTES
[1] Florida Family Law Rule of Procedure 12.540, entitled "Relief From Judgment, Decrees, or Orders," provides that "Florida Rule of Civil Procedure 1.540 shall govern general provisions concerning relief from judgment, decrees, or orders, except that there shall be no time limit for motions based on fraudulent financial affidavits in marital or paternity cases."
[2] Rule 1.540, entitled "Relief From Judgment, Decrees, or Orders," states in relevant part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) that the judgment or decree is void; or (5) that the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or decree or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court.
(Emphasis added.)
[3] Rule 1.540(b), entitled "Relief From Judgment, Decrees, or Orders," states in relevant part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) that the judgment or decree is void; or (5) that the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or decree or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court.
(Emphasis supplied.)