ORDER ON MOTION FOR DISQUALIFICATION
NORTHCUTT, Judge.
This court recently denied a petition for writ of prohibition filed by Mark A. Adams and Mark A. Adams, P.A. They have filed a motion variously seeking rehearing, a written opinion,' clarification, certification, and rehearing en banc. However, the petitioners have also filed a motion alleging that the judges of this court are disqualified from considering the foregoing motion. The disqualification motion names five judges specifically, including me, and “any other judges of this Court who feel that they are biased against the Petitioners or biased in favor of the Respondents!;.]”
First off, it is important to note that petitioners are mistaken in their reliance on section 38.10, Florida Statutes (2003), as the legal basis for their disqualification motion. As made clear by the Florida Supreme Court in In re Estate of Carlton, 378 So.2d 1212, 1216-17 (Fla.1980), this statute does not apply to the disqualification of appellate judges. Rather, Carlton held that an appellate judge must determine for himself or herself both the legal sufficiency of a motion to disqualify the judge and the propriety of withdrawing in any particular circumstance. Accordingly, insofar as the motion seeks *289 my disqualification, it has been submitted to me for determination. I deny the motion and decline to recuse myself.
As it relates to me, the disqualification motion recites that I participated in the consideration and disposition of two petitions for writ of prohibition filed by petitioners: case number 2D03-4844, filed October 27, 2003, and denied by this court on November 24, 2003; and this case, number 2D04-636, which was originally filed in the Florida Supreme Court, then transferred to this court on February 17, 2004, and denied by this court on March 1, 2004.
The disqualification motion also points out that the petition in case number 2D03-4844 was initially considered by a two-judge panel consisting of Judges Kelly and Wallace on October 29, 2003. My involvement began .thereafter when, as the disqualification motion characterizes it, the panel assigned to the petition “was rearranged” to consist of Judge Salcines, Judge Covington, and me. As mentioned, we denied the petition on November 24, 2003. Thereafter, in February 2004,1 was involved in the disposition of two motions regarding a stay that had been ordered when Judges Kelly and Wallace initially considered the petition in October. The disqualification motion also maintains that the decisions in which I participated were legally incorrect.
Taking a cue from Justice Overton’s treatment of the motion to disqualify him in Carlton, 378 So.2d at 1218, I note that petitioners’ motion to disqualify me likely is untimely. The motion reflects that petitioners became aware of the facts on which they rely no later than February 24, 2004. That was one week after the supreme court had transferred the petition in case number 2D04-636 to this court for its disposition, along with an instruction to expedite our consideration of the matter. Yet petitioners did not file their disqualification motion until March 16, well after this court’s March 1 ruling on the prohibition petition. See Lawson v. Longo, 547 So.2d 1279, 1281 (Fla. 3d DCA 1989) (collecting cases applying the proposition that the law does not favor the" disqualification of a judge after the judge has issued a decision in the cause, unless the delay is excused by a showing of good cause). Even so, given the relatively short time span between petitioners’ discovery of the facts and this court’s ruling, I would hesitate to deny their motion on that basis alone.
Beyond that, however, petitioners’ allegations regarding me are legally insufficient to justify my disqualification. The standard is whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial hearing. Randolph v. State, 853 So.2d 1051, 1064 (Fla.2003); MacKenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332, 1335 (Fla.1990); Livingston v. State, 441 So.2d 1083, 1087 (Fla.1983). Here, petitioners'allege that (1) I participated in the dispositions mentioned above, and (2) I incorrectly ruled against them. The latter is quintessentially insufficient as a ground for disqualifying a judge. Correll v. State, 698 So.2d 522 (Fla.1997); Barwick v. State, 660 So.2d 685, 692 (Fla.1995).
As to the former allegation, I have found no case involving a similar complaint, perhaps because it is self-evident that no reasonably prudent person would fear that a judge lacks impartiality simply because the judge has been assigned to' a particular case. See Randolph, 853 So.2d at 1064 (reiterating that a defendant’s subjective fears are'not reasonably sufficient to justify a well-founded fear of prejudice). This is especially true where, as here, there is no allegation that the judge was in any way responsible for making the assignment or, for that matter, had any motive for doing so. To be sure, the tone of *290 petitioners’ motion makes clear their suspicion that there was some irregularity in the assignment of the panels in the two cases. But that suspicion appears to be based on the petitioners’ unfounded assumption that in this court a two-judge motions panel that initially screens a writ petition will automatically be assigned to the panel that considers the petition on the merits. As the supreme court has observed, “We cannot operate a judicial system, or indeed a society, on the basis of the factually unsubstantiated perceptions of the cynical and distrustful.” MacKenzie, 565 So.2d at 1838 (quoting Breakstone v. MacKenzie, 561 So.2d 1164, 1178 (Fla. 3d DCA 1989) (Schwartz, J., dissenting)).
Finally, in Carlton, 378 So.2d at 1220, Justice Overton noted that even though a suggestion for disqualification is legally insufficient, a judge still may voluntarily recuse if he or she believes it would be in the best interests for the administration of justice. But he cautioned that voluntary recusal has limited efficacy when disqualification has been requested by the losing party after the judge’s participation in the court’s decision. In that circumstance, he wrote, voluntary recusal “would adversely and unjustly affect the successful party in the cause. Voluntary recusation after the rendition of judgment would be justifiable only when the judge or justice honestly believes he or she can no longer fairly and impartially rule on the cause.” Id. Justice Overton went on to note his belief that he could continue to properly consider the issues in that case fairly and impartially. Therefore, he wrote, he had a duty not to recuse himself. For the same reasons, the same is true of me in the instant case.