DAVIS, Judge.
P.G., the Former Husband, challenges the trial court’s final order denying his petition to disestablish his paternity as to A.G., the minor child of the Former Wife, E.W. We reverse.
The Former Husband and the Former Wife maintained an “on and off’ relationship prior to their marriage. During a period when their relationship was “off,” the Former Wife dated other gentlemen. The parties subsequently reconciled and moved in together after the Former Wife learned that she was pregnant. Upon the birth of A.G.,. the Former Husband signed the birth certificate as the father. Then in 1996, when A.G. was approximately two years old, the parties married. However, the union did not last, and the parties divorced in September 2004.
As a part of the dissolution proceeding, the Former Husband acknowledged that he was the father of A.G., and the final judgment of dissolution treated him as such by naming him primary residential parent for A.G. and requiring him and the Former Wife to equally share in the child’s medical bills, dental bills, and other childcare-related expenses.
According to the Former Husband, A.G. began experiencing behavioral and mental health issues in June 2009. Recognizing that there was no history of mental health issues in his family, the Former Husband began to question whether, in fact, he was A.G.’s biological father. To satisfy his curiosity, he took A.G. to a medical lab that specialized in DNA testing. The clinical results indicated that there was a zero percent chance that he was A.G.’s biological father, prompting the Former Husband to file a petition to disestablish paternity pursuant to section 742.18, Florida Statutes (2009).
At the hearing on the Former Husband’s petition, the Former Wife testified that the parties never used any type of birth control and that at the time of A.G.’s birth, she was confident that the Former Husband was the child’s biological father. She further testified that two days before the child’s birth, the Former Husband questioned her as to whether he was in fact the father of the child considering the timing of their reconciliation and the date of the child’s conception. However, after she reassured him, the Former Husband asserted that he did not care who the father was; that as far has he knew, he was the father; and that he wanted to be the father for her. Finally, the Former Wife testified that the Former Husband declined her offer to have testing done once the child was born.
The Former Husband, however, maintained that he always had believed that he *779 was A.G.’s natural father despite his being aware that the Former Wife had been involved with other men around the time of A.G.’s conception and despite the fact that during that same time he and the Former Wife always used a condom during sexual intercourse.
The trial court entered an order denying the Former Husband’s petition and concluding (1) that the Former Husband could not avail himself of section 742.18’s mechanism for disestablishing paternity because he was not a “male ordered to pay child support” as referred to in the statute, (2) that the new DNA test results did not provide newly discovered evidence because he “knew all along there was some chance [A.G.] was not his biological child,” and (3) that the Former Husband was estopped from denying that he is A.G.’s biological father because “he acted in every way as [her] father and primary custodian even after having conclusive proof that he is not her biological parent.” The court also made a specific determination that the Former Wife’s testimony “that she and [the Former Husband] reconciled and moved in ‘permanently’ after the possibility that there could be another biological parent to [A.G.]” was more believable than the Former Husband’s testimony that pri- or to receiving the DNA test results, he always had believed himself to be AG.’s biological father.
On appeal, the Former Husband first argues that the trial court erred in determining that section 742.18 was inapplicable here because the Former Husband has not been ordered to pay child support. We agree with the Former Husband. As part of the final judgment of dissolution of the parties’ marriage, he was ordered to share equally with the Former Wife the child’s medical, dental, and childcare-related expenses. Additionally, as the child’s primary residential parent, the Former Husband unquestionably was obligated to contribute to this child’s support. As such, for purposes of the statute, he may be considered a “male ordered to pay child support.”
The Former Husband also argues on appeal that the trial court erred in determining that the DNA test results attached to his petition did not constitute the “newly discovered evidence” required by the statute. See § 742.18(l)(a), (2)(a).
Section 742.18(1) provides as follows:
(1) This section establishes circumstances under which a male may disestablish paternity or terminate a child support obligation when the male is not the biological father of the child. To disestablish paternity or terminate a child support obligation, the male must file a petition in the circuit court having jurisdiction over the child support obligation. ... The petition must include:
(a) An affidavit executed by the petitioner that newly discovered evidence relating to the paternity of the child has come to the petitioner’s knowledge since the initial paternity determination or establishment of a child support obligation.
(b) The results of scientific tests that are generally acceptable within the scientific community to show a probability of paternity, administered within 90 days prior to the filing of such petition, which results indicate that the male ordered to pay such child support cannot be the father of the child for whom support is required....
(c) An affidavit executed by the petitioner stating that the petitioner is current on all child support payments for the child for whom relief is sought....
(Emphasis added.)
Here, the Former Husband’s petition identified the DNA test results as the new *780 ly discovered evidence that entitled him to relief. He maintains that pursuant to section 742.18(2), “[t]he court shall grant relief on a petition” that it finds satisfies an enumerated list of conditions. (Emphasis added.) Those conditions include the following:
(a) Newly discovered evidence relating to the •paternity of the child has come to the petitioner’s knowledge since the initial paternity determination or establishment of a child support obligation.
(b) The scientific test required in paragraph (l)(b) was properly conducted.
(c) The male ordered to pay child support is current on all child support payments for the applicable child or that the male ordered to pay child support has substantially complied with his child support obligation for the applicable child and that any delinquency in his child support obligation for that child arose from his inability for just cause to pay the delinquent child support when the delinquent child support became due.
(d) The male ordered to pay child support has not adopted the child.
(e) The child was not conceived by artificial insemination while the male ordered to pay child support and the child’s mother were in wedlock.
(f) The male ordered to pay child support did not act to prevent the biological father of the child from asserting his paternal rights with respect to the child.
(g) The child was younger than 18 years of age when the petition was filed.
(Emphasis added.)
It is undisputed here that the Former Husband has satisfied section 742.18(2)(b)-(g). As to subsection (2)(a), the DNA test results that the Former Husband became aware of since the initial paternity determination conclusively prove that he is not the biological father of the child. The trial court, however, concluded that such did not amount to the newly discovered evidence referred to in subsections (l)(a) and (2)(a). Specifically, the trial court determined:
[The Former Wife’s] testimony indicates that [the Former Husband] knew or should have known at the time of the child’s birth that there was a possibility that he was not [A.G.’s] biological father. He nonetheless accepted paternity and married her mother. This takes credence out of the argument that the DNA provided “newly” discovered evidence, since the Court believes that [the Former Husband] knew all along there was some chance [A.G.] was not his biological child.
We do not agree. Although there was evidence to support the finding that the Former Husband should have suspected that he was not the child’s biological father, there was no evidence to support a finding that he did in fact know that he was not the child’s father at the time he signed the child’s birth certificate. Furthermore, the Former Wife testified at trial that at the time of A.G.’s birth she herself was confident the Former Husband was the child’s biological father and that she reassured the Former Husband of that fact two days prior to the child’s birth. The trial court specifically found this testimony to be more credible than that of the Former Husband.[1]
*781 We therefore agree with the Former Husband that based on this record, the trial court was obligated to grant relief on his petition unless it found that he was precluded by a provision of subsection (3).
Section 742.18(3) mandates that the trial court “shall not set aside the paternity determination or child support order if the male engaged in [certain] conduct after learning that he is not the biological father of the child.” (Emphasis added.) The list of prescribed conduct includes marriage to the child’s mother, acknowledging paternity in a sworn statement, consenting to his name being placed on the birth certificate as the father, voluntarily agreeing to support the child and being required to pay support based on the agreement, disregarding a written notice from a state agency to appear for scientific testing, and signing a voluntary acknowledgement of paternity as provided for by law. § 742.18(3)(a)-(f).
The Former Husband testified below that he had not engaged in any of the conduct described in subsection (3) after he obtained the DNA test results that show a zero percent chance that he was this child’s biological father. In its final order, however, the trial court dismissed this assertion as “intellectually disingenuous” because
accepting [the Former Wife’s] credibility on the history of their relationship and the possibilities regarding [A.G.’s] paternity, the Court notes that [the Former Husband], a man who at the time of [the Former Wife’s] conception of the child was engaged in an on-and-off again [sic] relationship and had reason to question the Mother’s fidelity, nonetheless married her, consented to be named on the birth certificate, and voluntarily — and aggressively — pursued primary custody of said child in their divorce action and in all postjudgment attempts by the Mother to pursue modification....
The language of subsection (3), however, clearly refers to the male engaging in these acts “after learning that he is not the biological father of the child.” § 742.18(3). Reading subsection (3) in conjunction with subsections (1) and (2), which speak of the father’s knowledge after he has received “newly discovered evidence” that came to him “after the initial paternity determination,” we conclude that the “learning” referred to in subsection (3) is the knowledge resulting from the “newly discovered evidence.”
Arguably, the Former Husband’s consent to his name being placed on the birth certificate was the original establishment of paternity. See § 742.10(1) (“[I]f ... a voluntary acknowledgment of paternity that is witnessed by two individuals and signed under penalty of perjury as provided for in s. 382.013 ... is executed by both parties ... such ... constitutes the establishment of paternity for purposes of this chapter.”); see also § 382.013, Fla. Stat. (2009) (dealing with “birth registration”). The Former Husband’s marriage to the child’s mother and then his acceptance of parental responsibilities upon the dissolution of the marriage were subsequent to the original establishment of paternity but prior to his receiving the newly discovered *782 evidence of the conclusive DNA test results. There is nothing in the record that suggests that the Former Husband engaged in any of the listed conduct after receiving those DNA results. Accordingly, subsection (3) does not apply to this case, and the trial court should have granted the relief as required by subsection (2).
We recognize that our conclusion here conflicts with the First District’s opinion in Hooks v. Quaintance, 71 So.3d 908 (Fla. 1st DCA 2011). In that case, the Fust District concluded that “the plain language in section 742.18 requires a showing of newly discovered evidence in addition to DNA test results indicating that a male is not the father of the child.” Id. at 911. The First District set forth the facts in Hooks as follows:
It [wa]s undisputed that at the time [a]ppellant voluntarily acknowledged paternity, he was well aware of the fact that there was only a fifty percent chance that he was the biological father, and he admitted that he chose not to have a DNA test. Appellant could have discovered whether he was the biological father in 2005 before he voluntarily acknowledged paternity.

Id.

We, however, conclude that DNA test results performed since the initial determination of paternity satisfy the statutory requirement for newly discovered evidence so long as they meet the statute’s other time requirements. We further conclude that because the plain language of the statute only addresses the petitioner’s “knowledge since the initial paternity determination,” see § 742.18(l)(a), (2)(a), any suspicions he may have had prior to that initial establishment of paternity are irrelevant. As such, we certify conflict with Hooks, 71 So.3d 908.
Finally, the Former Husband argues on appeal that the trial court erred in concluding that he was estopped from disestablishing his paternity to A.G. because he “continued to assert parental responsibility over” her after receiving the DNA test results. Again, we agree with the Former Husband.
This case comes to us in an unusual posture. It is not the typical situation contemplated by the statute where the child resides with his or her mother and the biological father has been ordered to pay child support. In that typical situation, the statute requires the biological father to continue to meet his parental responsibility — paying child support — in order to even maintain the action. See § 742.18(l)(c) (requiring that the petition for disestablishment include an affidavit of the petitioner stating that he “is current on all child support payments for the child ... or that he has substantially complied with his child support obligation”). Here, the child lives with the Former Husband. As such, it would be necessary, and in keeping with the spirit of the statute, for the Former Husband to continue in his role as A.G.’s primary residential parent during the pendency of this proceeding.
We do observe that prior to the adoption of this statute, the law would have required that the petition be denied. The controlling issue in any case questioning paternity would have been the best interests of the child. See Fla. Dep’t of Revenue ex rel. R.A.E. v. M.L.S., 756 So.2d 125, 127 (Fla. 2d DCA 2000) (“Our paramount consideration in paternity cases is the best interests of the child.”). And the best interests of the child historically suggested the presumption of legitimacy. See Dep’t of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305, 307 (Fla.1993) (“We must start from the premise that the presumption of legitimacy is based on the policy of protecting the welfare of the child, i.e., the policy of advancing the best interests of the child.”). Furthermore, the law previously provided that the estab *783 lished father would have been required to raise the paternity issue in the dissolution proceedings and that absent such a challenge, res judicata principles barred him from further litigating the issue. See, e.g., Dep’t of Health & Rehabilitative Servs. v. Chambers, 472 So.2d 1358 (Fla. 2d DCA 1985); Johnson v. Johnson, 395 So.2d 640 (Fla. 2d DCA 1981). Accordingly, based on the facts of this case, the Former Husband may have been equitably estopped from challenging paternity at this time. See Sacks v. Sacks, 267 So.2d 73, 76 (Fla.1972) (“The respondent’s actions with respect to the child conclusively show that he not only treated the child as his, but also admitted that he is the child’s father.... The welfare of the child demands that we recognize and honor not the fiction, but the underlying purpose upon which the fiction was created. The respondent is the father; he wed the mother; he acknowledged paternity; and the law should not keep him from meeting his responsibilities to his child.”).
However, in 2006 the legislature provided that even after paternity has been established and the father-child relationship has been fostered, there is a mechanism by which a man may disestablish his paternity and avoid further obligation to support the child. Ch. 2006-265, Laws of Fla. We do understand that in this particular case the equities are extreme, but this legislative provision is available to the Former Husband, and his petition should have been granted.
Reversed and remanded for the trial court to enter a final order consistent with this opinion; conflict certified.
VILLANTI and KHOUZAM, JJ„ Concur.

. On appellate review, we accept the factual findings of the trial court if they are supported by competent, substantial evidence in the record. See Thorpe v. Myers, 67 So.3d 338, 341 (Fla. 2d DCA 2011) ("We defer to the circuit court's findings of fact when they are based on competent, substantial evidence.”). Additionally, based on the trial *781 court’s determination that the Former Wife's version of the circumstances regarding the birth of the child was more credible than that of the Former Husband, we must accept the facts as testified to by the Former Wife. See De Uejbe v. Wehbe, 875 So.2d 1284, 1284 (Fla. 3d DCA 2004) ("The determination of the credibility of witnesses is for the trial court, not this court.”). However, we review de novo the trial court’s application of the statute to those facts. See Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006) ("The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review.”).