DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JORDAN ALEXANDER DROUIN,**
Appellant,

v.

**RUBY MEGAN STUBER** n/k/a **RUBY MEGAN KANE,**
Appellee.

No. 4D14-3893

[July 1, 2015]

Appeal of a non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; David E. French, Judge; L.T. Case No. 502011DR001632XXXXSBFY.

Lisa Marie Macci of Lisa Marie Macci, P.A., Boca Raton, for appellant.

Jordan Gerber of the Law Office of Jordan Gerber, P.A., Boca Raton, for appellee.

STEVENSON, J.

Jordan Drouin, the biological father of C.M.D., challenges an order of the trial court that granted the mother's Florida Rule of Civil Procedure 1.540 motion to vacate a 2011 paternity judgment adjudicating Drouin the child's father. The trial court found the 2011 paternity judgment was void because Christopher Stuber, the mother's husband at the time of C.M.D.'s birth, was an indispensable party to the proceedings and had not been joined. Because we find merit in Drouin's contention that the mother cannot obtain relief from the judgment based upon an alleged violation of Stuber's due process rights, we reverse the order vacating the 2011 judgment.

In 2011, a "Default Final Judgment of Paternity" was entered, adjudicating Jordan Drouin the father of C.M.D. Several years later, in July of 2014, the child's mother moved to vacate the paternity judgment. The mother acknowledged that Drouin was the child's biological father, but argued that because C.M.D. was born during her intact marriage to Christopher Stuber, Stuber was presumed to be the child's legal father and Drouin had no right to seek to establish paternity to a child born into

an intact marriage.

An evidentiary hearing was held on the motion. By this time, the mother had divorced Stuber and was married to another man. The mother admitted that Drouin was C.M.D.'s biological father and that she had been served with the summons for the 2011 paternity proceedings. She denied receiving an actual copy of the complaint and testified Drouin told her the proceedings were solely for the purpose of having his name placed on the birth certificate. She admitted that, in June of 2011, several months after entry of the 2011 paternity judgment, she was told the 2011 proceedings had given Drouin custody of C.M.D. While the mother testified she advised Stuber of the proceedings on her motion to vacate, Stuber did not attend. Following the hearing, the trial court denied the mother's rule 1.540 motion.

The mother then filed a motion for rehearing. Drouin sought to strike the motion, insisting a motion for rehearing could not be directed to an order ruling on a rule 1.540(b) motion. The trial court nevertheless set the motion for hearing. At the hearing, the mother continued to argue the 2011 paternity judgment was void. Drouin argued the mother lacked standing to complain of the failure to join Stuber in the 2011 proceedings, that Stuber himself was making no challenge to the judgment and had, in fact, signed an affidavit stating he was not the child's legal father and had no intention of being the child's father. Ultimately, the trial court granted the mother's motion for rehearing and vacated the 2011 paternity judgment. In so doing, the trial court accepted the mother's argument that Stuber was the child's legal father as C.M.D. was born during the mother's intact marriage to Stuber, that Stuber's status as the child's legal father made him an indispensable party to the 2011 proceedings, and that the failure to provide Stuber notice and join Stuber in the 2011 proceedings rendered the 2011 paternity judgment void.

Drouin first argues that the order granting the mother's motion for rehearing and vacating the 2011 paternity judgment must be reversed because, having rendered its initial order denying the mother's rule 1.540 motion, the court was without jurisdiction to entertain the mother's motion for rehearing. Motions for rehearing are properly directed to "final judgments" and generally may not be directed to interlocutory orders. *See, e.g., Wagner v. Bieley, Wagner & Assocs., Inc.*, 263 So. 2d 1, 3 (Fla. 1972); *Seigler v. Bell*, 148 So. 3d 473, 478 (Fla. 5th DCA 2014). Post decretal orders may be viewed as "final judgments" and the proper subject of a motion for rehearing "[w]here an order after judgment is dispositive of any question," "completes the judicial labor on that portion of the cause after judgment," and "constitutes a final and distinct adjudication of rights

which have not been adjudicated in the original final judgment." *Clearwater Fed. Sav. & Loan Ass'n v. Sampson,* 336 So. 2d 78, 79–80 (Fla. 1976). The trial court's initial ruling denying the mother's rule 1.540 motion was such an order. *Cf. Popescu v. Laguna Master Ass'n,* 126 So. 3d 449, 450 (Fla. 4th DCA 2013) (holding that order denying a motion to vacate a foreclosure sale and certificate of title was properly the subject of a motion for rehearing as it was a "discrete final order, separate from the final lien foreclosure judgment" and was "a final adjudication of the parties' rights on issues distinct from those before the court prior to the lien foreclosure judgment"). Thus, Drouin's jurisdictional argument fails.

Next, Drouin asserts that the trial court erred in granting the mother relief on the ground that the 2011 judgment was rendered void by the failure to join Stuber, arguing that the mother cannot seek to set aside the judgment on the ground that Stuber's due process rights were violated. We agree. "'Constitutional rights are personal and may not be asserted vicariously.'" *Epstein v. Bank of Am.,* 162 So. 3d 159, 162 (Fla. 4th DCA 2015) (trial court granted bank's rule 1.540(b) motion to vacate a foreclosure that contained wrong legal description; rejecting *bank's* argument that judgment was void on the ground that the owner of the property identified in the judgment was not made a party to the proceedings) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973)). Any right to seek to set aside the 2011 paternity judgment for the failure to join Stuber belongs to Stuber, not the mother. Stuber has not seen fit to assert his status as the child's "legal father" and to challenge the 2011 paternity judgment due to his absence from the proceedings.

We note that, in vacating the earlier-entered paternity judgment, the trial court was particularly concerned about the absence of a *Privette* "best interests" of the child inquiry during the 2011 proceedings. *See Dep't of Health & Rehab. Servs. v. Privette,* 617 So. 2d 305 (Fla. 1993), *superseded by statute as stated in P.G. v. E.W.,* 75 So. 3d 777 (Fla. 2d DCA 2011) (recognizing 2006 enactment of section 742.18, Florida Statutes, authorizing action to disestablish paternity). *Privette* involved a paternity suit instituted by HRS that resulted in an order requiring the respondent to undergo a blood test to determine paternity. The child's mother was married at the time of the child's birth, and the husband's name was listed on the birth certificate. Respondent argued that the resulting presumption of legitimacy rendered the mother's husband the child's "father" and precluded any challenge to the same. The supreme court held that, before a blood test to determine paternity could be ordered, the trial court was first required to determine whether the child's best interests would be served by such testing. *Id.* at 308.

3

In subsequent years, however, the supreme court has recognized that "*Privette* addressed a case of contested paternity involving blood tests, and its application is limited to those instances where a child faces the threat of being declared illegitimate, and the 'legal father' also faces the threat of losing parental rights which he seeks to maintain." *Daniel v. Daniel*, 695 So. 2d 1253, 1255 (Fla. 1997); *see also Gantt v. Gantt*, 716 So. 2d 846, 847 (Fla. 4th DCA 1998) (recognizing *Daniel*'s limitation of *Privette*). Where, as here, a child is born during an intact marriage, the child does not face the threat of being declared illegitimate. *See Daniel*, 695 So. 2d at 1255 (recognizing that, where child was born during an intact marriage, her status as a "legitimate" child would not be affected by any paternity determination); *Lander v. Smith*, 906 So. 2d 1130, 1135 (Fla. 4th DCA 2005) (recognizing that, even if paternity is established in a man other than the mother's husband at the time of the child's birth, the child would not become illegitimate as he was born during the marriage). Additionally, it does not appear that there has ever been any dispute that Drouin is C.M.D.'s biological father, and there is nothing in the record suggesting that Stuber is faced with the loss of parental rights *that he wishes to maintain.*

Accordingly, the trial court's order granting the mother's motion for rehearing and vacating the 2011 paternity judgment is reversed. The matter is remanded to the trial court with directions that the 2011 paternity judgment be reinstated.

*Reversed and Remanded.*

GERBER and CONNER, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**