SALARIO, Judge.
The Department of Revenue appeals from a final order granting MJ.M.’s petition to disestablish paternity pursuant to section 742.18, Florida Statutes (2012). DOR asserts that the order runs afoul of the requirements of that statute because (1) M.J.M.’s petition was not based on newly discovered evidence, (2) M.J.M. did not file the petition within ninety days of a DNA test establishing that he was not the father, and (3) M.J.M. did not prove, and the trial court did not find, that M.J.M. substantially complied with his child support obligations and that any delinquency was attributable to just cause. As we explain below, we find no merit in DOR’s arguments regarding newly discovered evidence and the timeliness of M.J.M/s petition. We agree with DOR, however, that the trial court failed to make legally required findings on the child support issue, and we therefore reverse its order and remand for that purpose.
I.
A.
Section 742.18(1) identifies the “circumstances under which a male may disestablish paternity or terminate a child support obligation when the male is not the biological father of the child.” The statute regulates both the manner in which a male seeking to disestablish paternity or terminate a support obligation must seek that relief and the findings that a trial court must make to order those remedies. As to the manner in which relief should be sought, the statute provides that the male must file a petition with the trial court that includes the following:
(a)An affidavit executed by the petitioner that newly discovered evidence relating to the paternity of the child has come to the petitioner’s knowledge since the initial paternity determination or establishment of a child support obligation.
(b) The results of scientific tests that are generally acceptable within the scientific community to show a probability of paternity, administered within 90 days pri- or to the filing of such petition, which results indicate that the male ordered to pay such child support cannot be the father of the child for whom support is required, or an affidavit executed by the petitioner stating that he did not have access to the child to have scientific testing performed prior to the filing of the petition. A male who suspects he is not the father but does not have access to the child to have scientific testing performed may file a petition requesting the court to order the child to be tested.
(c) An affidavit executed by the petitioner stating that the petitioner is current on all child support payments for the child for whom relief is sought or that he has substantially complied with his child support obligation for the applicable child and that any delinquency in his child support obligation for that child arose from his inability for just cause to pay the delinquent child support when the delinquent child support became due.
§ 742.18(1). The statute also provides that a court must grant relief upon a finding of several facts, which include the following that are relevant to DOR’s appellate arguments in this case:
(a) Newly discovered evidence relating to the paternity of the child has come to the petitioner’s knowledge since the initial paternity determination or establishment of a child support obligation.
[[Image here]]
(c) The male ordered to pay child support is current on all child support payments for the applicable child or that the male ordered to pay child support has *1151 substantially complied with his child support obligation for the applicable child and that any delinquency in his child support obligation for that child arose from his inability for just cause to pay the delinquent child support when the delinquent child support became due.
§ 742.18(2).
With this brief explanation of the statutory requirements behind us, we turn to the facts of this case.
B.
In May 2005, DOR filed a complaint to establish paternity against M.J.M., who the mother then claimed was the father of M.R. M.J.M. did not serve an answer to that complaint. Nor did he otherwise appear in the action or defend himself in that action. As a result, in August 2005, the trial court entered a final judgment establishing that M.J.M. was M.R.’s father and ordering him to make payments for the support of M.R.
On December 6, 2012, M.J.M. through counsel filed a petition to disestablish paternity pursuant to section 742.18. He named DOR and M.R.’s mother as respondents. The petition alleged that after paternity was established, M.R.’s mother called M.J.M. and admitted, for the first time, that M.R. was not his child. With the mother’s blessing, M.J.M. thereafter took a paternity test in June 2010 which confirmed her admission. The petition alleged that these two things constituted newly discovered evidence and attached the results of the DNA test. M.J.M. further alleged in an affidavit attached to the petition that he was either current on his child support obligation or in substantial compliance with the obligation and that any delinquency in his obligation arose from his inability for just cause to pay it.
DOR filed an answer in which it neither admitted nor denied M.J.M.’s allegations regarding the mother’s admission and the DNA test and asserted no defenses related to either the newly discovered evidence claim or the timeliness of the DNA test. It did, however, contest MJ.M.’s claim that he was in compliance with his child support obligation by stating he owed more than $20,000 in back child support. M.R.’s mother filed an answer in which she stated that she was not contesting the disestablishment of paternity.
The petition was heard over the course of several hearings at which M.J.M. appeared pro se. The trial court asked M.J.M., under oath, a series of questions related both to the issue of paternity and to the issue of child support. In the main, its questions called for short, unelaborated answers. M.J.M. often attempted to explain his answers or other circumstances he thought relevant to his case but was summarily prevented from doing so by the trial court. DOR did not present any evidence and relied solely on the argument of counsel.
As to the alleged newly discovered evidence—the conversation with M.R.’s mother and the DNA test results—M.J.M. testified consistently with the allegations of his petition. He further testified that he and M.R.’s mother were in the middle of a breakup and no longer having sex around the time she became pregnant. For that reason, M.J.M. stated at different points both that he “knew” he was not M.R.’s father and, alternatively, that he “had a feeling” he was not. He explained that he was unable to appear at the hearing on the initial petition to establish paternity because he had been in a car accident. He testified that he hired an attorney in March 2011 to address the paternity issue. The attorney inexplicably failed to file the petition until December 2012.
As to the question of child support, M.J.M. admitted that he was delinquent on *1152 those payments, which DOR alleged were $24,000 in arrears. M.J.M. testified that he could not make his payments because he was unemployed and not able to do so. He tried to explain that because of his stated inability to pay support, his driver’s license had been suspended—in fact, he had been jailed for driving on a suspended license— and that his employment prospects had become limited as a result of his inability to drive. The trial court did not, however, permit M.J.M. to offer a complete explanation of his reasons for nonpayment.
DOR argued that the trial court was required to deny the petition under section 742.18 because the evidence was not newly discovered. In its view, M. J.M. knew at the time paternity was established that he was not the father and was obligated to have sought DNA testing at that time. In addition, DOR argued that M.J.M. was barred from seeking disestablishment under the statute because he failed to file his petition within ninety days of the DNA test that he took after M.R.’s mother told him he was not the father. After the trial court stated that it was inclined to disestablish paternity, DOR requested, and the trial court ordered, that M.J.M. submit to a second DNA test. The results showed again that M.J.M. was not M.R.’s father.
After additional hearings, the trial court entered an order disestablishing paternity. It found, in relevant part, that the mother’s admission and DNA test results constituted newly discovered evidence sufficient to justify the disestablishment of paternity and, further, that just cause “may have existed” for MJ.M.’s failure to pay the delinquent child support. Based on these and other findings, the trial court disestablished paternity.
II.
We review the trial court’s findings of the facts necessary to grant relief under section 742.18 for competent substantial evidence, P.G. v. E.W., 75 So.3d 777, 780 n.1 (Fla. 2d DCA 2011), and its interpretation of that statute de novo, Dep’t of Revenue ex rel. T.L.S. v. S.J.W., 113 So.3d 85, 86 (Fla. 2d DCA 2013). DOR asserts that the trial court erred in determining that the mother’s admission and the 2010 DNA test constituted newly discovered evidence under section 742.18(2)(a). It also argues that M.J.M.’s petition is time-barred because it was not brought within ninety days of the 2010 DNA test under 742.18(l)(b). Finally, it asserts that the trial court failed to make the findings required by section 742.18(2)(c). We address each argument in turn.
A.
DOR argues that the mother’s admission and the DNA test results did not amount to newly discovered evidence because M.J.M. knew at the time of the original paternity proceedings that he was not the father. The unambiguous language of the statute, however, precludes this argument. Section 742.18(2)(a) provides for disestablishment of paternity when newly discovered evidence “has come to the petitioner’s knowledge since the initial paternity determination.” Id. (emphasis added); see also § 742.18(l)(a) (requiring petition to include an affidavit showing that newly discovered evidence has come to the petitioner’s knowledge “since the initial paternity determination or establishment of a child support obligation”). Under this clear language, the question is not—as DOR would have it—whether a petitioner ever knew of evidence that he was not the father; the question is instead whether newly discovered evidence came to the petitioner’s knowledge after paternity was established.
This is exactly how our court has interpreted section 742.18. In P.G., the petition *1153 er and the mother had an on-again-off-again relationship during which the mother dated other men. 75 So,3d at 778. After she became pregnant, the petitioner questioned whether he was the father and, when reassured that he was, stated that “he did not care who the father was” and that he wanted to be the father. Id. When the child was bom, the petitioner signed a birth certifícate as the father. After the child developed mental health issues of which the petitioner had no family history, he again questioned whether he was the father. A DNA test showed that he was not, and he filed a petition under section 742.18. Id. The trial court held that the DNA test results were not newly discovered evidence because the petitioner “knew all along there was some chance” the child was not his and denied the petition. Id. at 779.
This court reversed and held that the trial court was “obligated to grant relief’ notwithstanding the petitioner’s reason to believe at the time of the initial determination of paternity that he was not in fact the child’s father. Id. at 781. With respect to whether the DNA test results were newly discovered evidence covered by section 742.18, we reasoned as follows:
DNA test results performed since the initial determination of paternity satisfy the statutory requirement for newly discovered evidence so long as they meet the statute’s other time requirements .... [B]ecause the plain language of the statute only addresses the petitioner’s “knowledge since the initial paternity determination,” see § 742.18(l)(a), (2)(a), any suspicions he may have had prior to that initial establishment of paternity are irrelevant.
Id. at 782 (emphasis added).
In that regard, we certified conflict with the First District’s decision in Hooks v. Quaintance, 71 So.3d 908 (Fla. 1st DCA 2011). In Hooks, the petitioner was aware when paternity was established that there was a fifty-fifty chance the child was not his. When he tried to disestablish paternity years later on the basis of a DNA test, the trial court denied his petition. The First District affirmed and held that the test results were not newly discovered evidence under section 742.18 because, among other things, the petitioner could have had a DNA test done before the initial paternity determination but did not, thus failing to act diligently. Id. at 911-12. It reasoned that the statutory term “newly discovered evidence” was borrowed from Florida Rule of Civil Procedure 1.540(b)(2), which includes a due diligence requirement under which the petitioner would not have been entitled to relief because of his failure to act diligently on the information he had prior to the initial determination of paternity. Id. at 911.
Our reasoning in P.G.—including the conflict of that reasoning with the decision in Hooks—establishes that information in a petitioner’s possession before the paternity determination and his action (or lack thereof)' upon that information is not material to whether he has satisfied sections 742.18(l)(a) and (2)(a). What is relevant is whether new evidence has come to the petitioner’s knowledge since the determination of paternity.[1] P.G., 75 So.3d at 782. *1154 That is certainly the case here. After years of maintaining that M.J.M. was the father, the mother confessed to him that he was not. That admission is new evidence. Based on that admission, M.J.M. got a DNA test, the results of which showed that he was not the father. Those test results, too, are new evidence. Both pieces of evidence came to MJ.M.’s knowledge “since the initial paternity determination.” See § 742.18(2)(a). Under our decision in P.G., the requirement of newly discovered evidence has been satisfied.
DOR argues that this case is distinguishable from P.G. because here M.J.M. knew that he was not the father, while the petitioner in P.G. merely suspected that he was not. The problem for DOR is that the trial court made an express finding of fact that conflicts with its argument here; the trial court found that M.J.M. “did not have any actual knowledge that he was not the minor child’s father prior to” the initial paternity determination. If that factual finding is supported by competent substantial evidence, the alleged distinction between this case and P.G. evaporates. DOR has not argued on appeal that this finding is unsupported by competent substantial evidence—indeed, it has not mentioned the finding at all—and it has therefore abandoned any argument as to the sufficiency of the evidence to support it. See Weaver v. Weaver, 95 So.3d 1029, 1030 (Fla. 2d DCA 2012) (deeming issue that was not developed in the argument section of appellant’s brief abandoned).
But even if DOR had raised the issue, it would be unavailing. To be sure, M.J.M. used the word “knew” to describe his understanding that he was not the father. But DOR strips this testimony from its context, M.J.M. also testified only that he “had a feeling” that he was not the father. The basis for both statements was that M.J.M. and the mother were in the middle of a breakup and not having sex at a time that M.J.M. thought would explain her pregnancy. The evidence was thus sufficient for the trial court to find that M.J.M.’s understanding of his paternity was feeling or suspicion rather than confirmed knowledge. Because the difference that DOR posits between P.G. and this case is rendered illusory by the trial court’s supported finding of fact, P.G. is controlling here and compels the conclusion that M.J.M. satisfied the newly discovered evidence requirement.
B.
DOR next contends that MJ.M.’s petition is untimely and therefore time-barred because it was not filed within ninety days of his DNA test results as required by section 742.18(l)(b). This section requires that a petition to disestablish paternity include “[t]he results of scientific tests’... administered within 90 days prior to the filing of such petition, which results indicate that the male ordered to pay such child support cannot be the father.” § 742.18(l)(b) (emphasis added). M.J.M.’s petition was not filed within ninety days of the administration of the paternity test. DOR’s argument is, in essence, that the statute is akin .to a statute of limitation, a statute of repose, or a jurisdictional statute of nonclaim that bars as untimely any petition for disestablishment that is not filed within ninety days of the first DNA test a *1155 petitioner takes that shows that the petitioner is not the biological father of the child.
DOR’s argument is inconsistent with the plain language of the statute. By its terms, section 742.18(1) regulates what a petition to disestablish paternity must contain and provides that one thing it must contain is the results of a DNA test administered no more than ninety days before the petition is filed. See also J.C.J. v. Fla. Dep’t. of Revenue ex rel. O.S.B., 80 So.3d 1106, 1108 (Fla. 2d DOA 2012). The statute does not say that if a petition is not filed within ninety days of any DNA test, the petitioner’s right to seek disestablishment of paternity is forever lost. Nor is .that the natural or logical import of a statutory requirement that a petition include the result of a DNA test that is no more than ninety days old.
Had the legislature meant for the statute to function as a statute. of limitations, a statute of repose, or a jurisdictional statute of nonclaim it would and quite easily could have used language that served that function. The statute books are filled with language that does that kind of thing. See, e.g., § 72.011(5), Fla. Stat. (2012) (jurisdictional statute of nonclaim); §§ 95.031(2) (prescribing periods of both limitations and repose), .11 (prescribing periods of limitations), Fla. Stat. (2012). That it chose not to word the statute in a way that effects a time-bar confirms what the plain language of the statute says. See Nat’l Auto Serv. Ctrs., Inc. v. F/R 550, LLC, 192 So.3d 498, 512-13 (Fla. 2d DCA 2016) (discussing, in the context of limitations and repose, the premise that the legislature knows how to select the language necessary to accomplish a result). It regulates only what a petition to disestablish paternity must contain, i.e., the results of a test completed within the previous ninety days, not whether a petition to disestablish paternity becomes time-barred and lost if not brought within that time. The statute does not require a DNA test accompanying the petition be the first test taken by a petitioner.[2]
DOR relies on Aulet v. Castro, 44 So.3d 140 (Fla. 3d DCA 2010), to reach a contrary conclusion. There, a trial court dismissed a petition because the attached results relied on a test that was more than ninety days old. The petitioner argued that because the existence of a DNA test is not an element of a cause of action for the disestablishment of paternity, the failure of his petition to address the requirements of section 742.18(l)(b) could not serve as the basis for a motion to dismiss. The Third District rejected that argument and held that “the plain language of the statute makes clear that scientific testing is indeed a, mandatory requirement.” Id. at 144. It also stated that “once a man receives the results of a scientific test confirming he is not the father, he must choose to act .on those results within ninety days.” Id. Relying on that language, DOR asserts that section 742.18(l)(b) does effect a time-bar.
The statement upon which DOR relies is dictum. The issue in Aulet was whether á petition that fails to comply with section 742.18(l)(b) may be dismissed on that account, not whether the petitioner’s right to seek disestablishment is substantively time-barred if a petition is not brought within ninety days of the first DNA test a petitioner ever takes. To the extent, however, that Aulet means what it appears to say in dictum to have legal authority, we respectfully disagree. For the-reasons we have stated, the unambiguous language of *1156 the statute does not function as the language of limitations, repose, or nonclaim.
That still leaves us with the question of whether MJ.M.’s failure to attach the results of a DNA test that complied with the statute required that the trial court deny the petition at the final hearing as insufficiently pleaded. We believe that it does not because our court has recognized that minor, nonprejudicial variations from the requirements of section 742.18(1) within a petition do not require that the petition be denied at a final hearing. In J.C.J., a putative father filed a petition to disestablish paternity on grounds of newly discovered evidence. 80 So.3d at' 1107. The petition was sworn to by the putative father, who stated that he did not have access to the child to conduct DNA testing. The putative father failed, however, to file an affidavit attesting to that fact as required by the statute. Id at 1109; see also § 742.18(l)(b) (requiring, where no DNA test results are attached, that the petitioner include “an affidavit ... stating that he did not have access'to the child to have scientific testing performed”). After conducting a hearing on the petition, the trial court denied relief because the putative father failed to attach the required affidavit to his ■ petition. We reversed and held that “the pleadings filed in the case provide[d] the functional equivalent of an affidavit” and that “an additional affidavit would not [have] provide[d] any further proof or notice, and accepting the[] pleadings as the equivalent of the statutorily described affidavit d[id] not in any way prejudice the Mother, nor d[id] it impact the effectiveness or intent of the statute.” 80 So.3d at 1109.
Although the deficiency in this case is different from the deficiency in J.C.J., the principle is equally applicable. In this case, although the petition contained test results that were more than ninety days old, at the final hearing DOR requested, and the trial court ordered, a new DNA test, the results of which again established that M.J.M. was not the biological father of M.R. DOR went to the final hearing on notice of the basis of M.J.M.’s claim to disestablish paternity and then asked for and received the functional equivalent of the DNA test results the statute requires in the form of a new DNA test ordered by the trial court. The mere formality of filing an amended petition based on the new test date would add nothing here, especially considering DOR’s agreement to a new test and the fact that it did not even raise the timeliness of M.J.M.’s petition in its written answer to it. Accepting those new DNA test results as the equivalent of the statutorily required DNA test neither caused prejudice to DOR nor undermined the purpose that the text of section 742.18(l)(b) evinces—namely, that a petition to disestablish paternity may be supported by a DNA test that is less than ninety days old. Under J.C.J., then, the trial court did not err in declining to deny the petition on the basis that the DNA test results attached thereto were more than ninety days old.
C.
Finally, DOR alleges that the trial court failed to make statutorily required findings regarding child support and that, at all events, the evidence adduced at the hearings would have been insufficient to support such findings. Section 742.18(2)(c) requires that where a petitioner is not current on child support, a trial court may not disestablish paternity unless it finds that the petitioner has “substantially complied” with his child support obligation and that there is “just cause” for any delinquency.
DOR is correct in that the trial court failed to make any findings as to the status of MJ.M.’s child support payments or as to whether he had substantially complied *1157 with his support obligation. It is also correct that the trial court’s just cause finding was ambiguous at best. The trial court found only that “just cause may have existed for [MJ.MJs failure to pay the delinquent child support when it became due.” Thus, the trial court did not actually make any of the findings that section 742.18(2)(c) requires. See Healy v. Healy, 884 So.2d 287, 291 (Fla. 2d DCA 2002) (holding that the trial court’s findings were ambiguous and instructing that it clarify its findings on remand); Peterson v. Jason, 513 So.2d 1351, 1353 (Fla. 1st DCA 1987) (holding that equivocal findings were insufficient to support the termination of parental visitation). We are therefore required to reverse the disestablishment order and remand for reconsideration. See Gotsis v. Gotsis, 813 So.2d 207, 208 (Fla. 2d DCA 2002).
We make no determination as to whether M.J.M, will be able to meet his burden to show substantial compliance or just cause. See All Children’s Hosp., Inc. v. Dep’t of Admin. Hearings, 55 So.3d 670, 672 (Fla. 2d DCA 2011) (“[O]f course, the fact-finding necessary to resolve the issue is beyond our purview.”). In that regard, the procedure by which the evidence was taken compels us to remand to provide M.J.M. with an opportunity to meet that burden. M.J.M. appeared pro se at the hearings, at which time the trial court asked a series of pointed questions, discouraged or precluded any effort by M.J.M. to explain his situation, and left M.J.M. without a genuine opportunity to meet his burden regarding substantial compliance or just cause. On remand, the trial court should conduct a full hearing on these issues.[3] See Dep’t of Revenue ex rel. M.J.W. v. G.A.T., 76 So.3d 1083, 1085 (Fla. 2d DCA 2011) (remanding for an evidentia-ry hearing in a paternity disestablishment proceeding to provide mother who failed to submit child for genetic testing with an opportunity to show good cause for her failure to do so); cf. Dep’t of Children & *1158 Family Servs. v. J.W., 890 So.2d 337, 340-41 (Fla. 2d DCA 2004) (remanding for the taking of further evidence where Department of Children and Family Services had not been provided an opportunity to present additional evidence after the trial court correctly determined that clear and convincing evidence standard applied); Spooner v. Spooner, 838 So.2d 1202, 1203 .(Fla. 2d DCA 2003) (remanding for evidentiary hearing where former husband had not been afforded an opportunity to show a substantial change in circumstances warranting a modification of alimony obligation).
III.
Although we reject DOR’s arguments concerning newly discovered evidence and timeliness, we reverse and remand for the limited purpose of having the trial court conduct further proceedings and make appropriate findings regarding the child support issue. The trial court should then grant or deny the petition, depending on the result dictated by its findings about child support. We again certify conflict with Hooks, and we further certify conflict with Aulet to the extent its holding is inconsistent with our. holding about the meaning of section 742.18(l)(b).
Reversed and remanded; conflict certified,
BLACK, J., Concurs.
WALLACE, J., Concurs in part and dissents in part.

. This is the interpretation most true to the plain meaning of the statutory text "since the initial determination of paternity.” Although the First District might be correct that the statutory term "newly discovered evidence” was borrowed from rule 1.540(b)(2), it is significant that the statute did not borrow the full text of that rule. Rule 1.540(b)(2) provides for relief from judgment on the basis of newly discovered evidence "which by due diligence could not have been discovered in time to move for a new trial or rehearing” in the proceeding in which the judgment was rendered, The fact that section 742.18 does not include similar language, and instead focuses on whether the evidence came' to light after *1154 the paternity determination, suggests that the legislature did not intend the same result. Cf. Cason v, Fla. Dep't of Mgmt. Servs., 944 So.2d 306, 315 (Fla. 2006) (declining to read words into a statute when "the [¡legislature ‘knows how to' accomplish what it has omitted.” (quoting Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla. 2000))). This is not to say that a petitioner’s diligence after coming into possession of new evidence may not be relevant to whether section 742,18 affords relief; DOR has not presented that issue on appeal in this case.

. We do not address whether a petition filed within ninety days of a subsequent DNA test could be a factor in the consideration of whether it constitutes newly discovered evidence because that issue was not raised on appeal.

. The dissent asserts that our decision to remand on the issues of substantial compliance and just cause is at odds with the rule that appellate courts generally do not allow a party an opportunity to present additional evidence where it failed to meet its burden of proof in the trial court. The problem here, however, is not that M.J.M. failed to meet his burden after having had an opportunity to do so—which were the circumstances in the cases the dissent cites—but rather that M.J.M. was denied that opportunity by the manner in which the trial court conducted the hearings on his petition. As the decisions cited in the text demonstrate, remand is the correct remedy in such cases. See also Winn Dixie Stores, Inc. v. Frank, 665 So.2d 271, 272 (Fla. 1st DCA 1995) (remanding for a "full and fair” opportunity for the claimant to present her case where the trier of fact "interrupted the proceedings and prevented the taking of additional evidence”). The dissent also argues that M.J.M. will never be able to meet his burden of proof and that remand is therefore futile, relying principally on two contempt orders that found that M.J.M. had the ability to pay child support. The most recent of those orders was entered in October 2006—more than six years before the petition to disestablish was filed—and our record tells nothing about what evidence (if any) was introduced to support them. Nor do these orders establish that M.J.M. had the ability to pay at any time after October 2006. See Laing v. Laing, 574 So.2d 279, 280-81 (Fla. 3d DCA 1991) (holding that order determining ability to pay child support at a past time did not resolve party’s present ability to pay, such that party was entitled to an evidentiary hearing on that subject). The balance of the dissent’s futility argument appears to rest on speculation from various facts evidenced by a limited record—for example, the dissent’s assumption that because M.J.M. was able to pay an attorney $2500 to file the petition, he must have been able to comply with his child support obligation. This kind of speculation illustrates why remand is necessary: the limited record available to us—limited in significant part because the trial court limited M.J.M.'s ability to present his case and did not make the requisite findings of fact—leaves us as a reviewing court (as opposed to a factfinding court) unable to resolve the issues without resort to guesswork.